## Bostwick and others *vs.* Atkins and others.

Where an application is made to the court of chancery to confirm a sale of real estate, made under the order of a surrogate who had jurisdiction of the matter, the investigation must be limited to the fairness and good faith *of the sale;* and it is not competent to inquire into the regularity and propriety of the previous proceedings before the surrogate.

Whether upon such an application the jurisdiction of the surrogate to make the order of sale is open to inquiry, *quere.*

If upon such an application a decree is made favorable to the applicant, it should confirm the sale only in respect to the defect or irregularity to cure which the proceeding is had; and the parties interested adversely to the sale should not be precluded by the decree from contesting it on other grounds.

Under the statute of 1801, authorizing the sale of a decedent's real estate to pay debts, the surrogate acquires jurisdiction of the subject matter of the proceedings by the presentation of an account of the personal estate and debts, accompanied by a request for his aid in the premises.(*a*)

A testamentary guardian of an infant devisee has no right to purchase the real estate of the testator at a sale under a surrogate's order.   The sale, however, is not absolutely void, but its validity is at the election of the ward.

And where a sale was made beneficial to the ward at which he was present, and who, instead of repudiating it, suffered eighteen years to elapse after he became

(*a*) The surrogate must also have jurisdiction of the parties.   (*See Schneider v. McFarland,* 2 *Comst.* 459.)

of age without impeaching the conveyance, during which time the title had. passed into the hands of innocent parties; *held*, that he must be deemed to have waived the objection and to have affirmed the sale.

APPEAL from the supreme court. The case is sufficiently stated in the opinion of STRONG, J.

*B. D. Noxon*, for appellants.

*A. Gibbs*, for respondents.

STRONG, J. The defendants, John L. Tunison and Jane, the wife of James Atkins, are the devisees and sole heirs at law of James Tunison, who died in the state of New-Jersey in March, 1807, seized at the time of a lot of land in the town of Ovid, in the county of Seneca, in this state, which is the subject of the controversy in this case. The original plaintiffs, David Kinnan and Andrew Bostwick, both of whom are now dead, and whose representatives are the present plaintiffs, claimed to hold the land mediately under a conveyance made to Philip Tunison by the executor of the will of James Tunison, pursuant to an order for the sale of such land for the payment of his debts made by the surrogate of the county of Seneca. Atkins and his wife and John L. Tunison instituted actions of ejectment for the land in controversy against Kinnan and Bostwick, alledging that the conveyance from the executor was insufficient to pass the title, inasmuch as it did not set forth at large the order of the surrogate directing the sale. Those cases came before the supreme court, (20 *Wend.* 241,) when it was decided that the conveyance was inoperative by reason of the omission. Kinnan and Bostwick then commenced this suit in the late court of chancery, asking for injunctions against the further prosecution of the actions of ejectment, and that the irregularity in the executor's conveyance might be rectified, and the sale under the surrogate's order confirmed, pursuant to the statute. (2 *R. S.* 111, § 61.) The vice chancellor of the sixth circuit, before whom the suit in chancery was instituted, made an order referring it to a master to make the examination and report required by

the statute; and on the reception and consideration of the report decreed perpetual injunctions against the further prosecution of the suits at law, and ordered that the sale and conveyance under the surrogate's order should be confirmed. The defendants in this suit appealed to the supreme court, where the vice chancellor's decree was reversed, and the matter now comes before us on an appeal from the judgment of the supreme court.

The statute directs that if upon the hearing, if the application to rectify the irregularity and confirm the sale under such circumstances, it shall satisfactorily appear that the sale was made fairly and in good faith, an order shall be made confirming the sale and conveyance. (§ 65.) The defendants resist the application for a confirmation of the sale not only on the ground that it was made unfairly and in bad faith, but on the additional allegation that the surrogate who directed it had no jurisdiction in the matter. Although the statute makes no mention of the latter objection, yet it is competent for the defendants to raise it, and to avail themselves of it if well founded, as the want of jurisdiction would render the whole proceeding, sale as well as conveyance, void, and it is impossible to confirm a nullity.

The objection to the jurisdiction of the surrogate of Seneca county is based on the grounds, first, that James Tunison was an inhabitant of New-Jersey and not of this state at the time of his death; and second, that the executor had not made and filed the inventory of the personal estate of the deceased required by the statute, when the application for the sale was made.

The statute under which the surrogate proceeded (1 *R. L.* *of* 1801, *p.* 319, § 3) authorizes the surrogate to take the proof of the last wills and testaments of all persons who may have been inhabitants of the same county at the time of their decease, and expressly excepts persons who may not at the time of their deaths have been inhabitants of this state, and directs (§ 20) that the application to sell the real estate of the deceased for the payment of his debts shall be made to the surrogate of the county

in which probate of the will was had. In this case the will was proved before the surrogate of Seneca county, and application for a sale of the testator's real estate was made to the same officer. If the deceased was, at the time of his death, an inhabitant of this state, he was clearly an inhabitant of Seneca county, as that was his only place of residence while in this state. [The learned judge here discussed the question of residence upon the testimony, and stated his conclusion to be that the decedent, at the time of his death, was an inhabitant of Seneca county, in this state, and consequently, that the surrogate, so far as related to that point, had the requisite jurisdiction. He then proceeded.]

There is no evidence in this case to prove that the usual inventory had or had not been filed, previous to the application for a sale. It does not appear that the filing of such inventory was necessary to confer jurisdiction upon the surrogate. All that the statute requires in the first instance is that when the executor shall discover or suspect that the personal estate of the testator is insufficient to pay his debts, that he shall thereupon make a just and true account of such personal estate and debts, and deliver it to the surrogate and request his aid in the premises. All these prerequisites existed in this case. The restriction by reason of the omission to file an inventory, applies only to the order for a sale, not to the acquisition of jurisdiction over the application. That is acquired upon the completion of the preliminaries prescribed by the statute. When the inferior officer has thus obtained jurisdiction of the case, and that appears upon his record, the presumption is in favor of the regularity and validity of his subsequent proceedings, and it is not necessary to state in his record that he has done every thing, or had all the evidence, which might have been essential to render his determination proper. If he has violated any provisions of the statute, or any rule of common law, which if shown would render his acts invalid, that should have been corrected on a direct appeal; or, if available on a collateral proceeding, should have been averred in the pleadings, and proved. In this case the objection is nowhere alluded to in the answer. Nor, if it

Bostwick *v.* Atkins.

had been, is it supported by proof. I am satisfied it cannot prevail.

The chancellor was required by the statute to make such order for confirming the sale and conveyance as he should deem equitable, if it should appear to his satisfaction that the *sale* was made *fairly* and *in good faith.* (§ 65.) The learned judge who gave the opinion of the supreme court seems to suppose that on the investigation it is competent and proper to go into the inquiry as to the propriety of the surrogate's order for a sale, and whether that was warranted by the facts of the case. And he is supported by what was said by the late chancellor in the *case of Hemiup,* (3 *Paige,* 305.) But with great deference, I do not so understand the statute. That says nothing about the proceedings before the surrogate anterior to the sale, and it can scarcely be presumed that the legislature intended to overrule in these cases the principle that where an inferior judicial officer has jurisdiction over the subject matter all shall be considered as rightly done, except on a direct appeal from his decision to a tribunal which has the power to review and correct it. Ordinarily purchasers have nothing to do with those proceedings; they have no opportunity to ascertain whether they have been warranted by the facts existing, or proved; they can refer only to the record and learn from that whether such proceedings have been regular and within the jurisdiction of the tribunal before and by which they were conducted. There can be no propriety in requiring an innocent purchaser on an application by him for the correction of the mistakes of another to his prejudice, to go into an investigation of facts with which he had no connection, and of which ordinarily he had no knowledge, or to support by evidence the regularity and validity of proceedings over which he had no control. Such a rule could not be supported on the ground that the equities of the heirs or devisees, and innocent purchasers are equal. They are not equal. The heir or devisee must be made to some extent a party to the proceedings; or he must at least have notice of them. If he chooses he can appear and oppose the application. Should he be injured by the misconduct of the executor or administra-

tor, he has a direct remedy by an appeal, or he can rely in the case of an executor upon the responsibility of one selected by his ancestor, and if such responsibility is doubtful, security may in many instances be obtained upon his application ; and in the case of an administrator, upon his responsibility and that of his sureties approved by a public officer ; whereas the remedy of the purchaser against either (except in the case of covenants, which are seldom given) would be circuitous, if there should be any. The purchaser parts with his money, which is applied to the relief of the estate, if not of the existing holder, at least of the person from whom he acquires his title.   The provisions of the statute refer therefore with great propriety and justice expressly and exclusively to the sale, and there can be no reason why they should be extended, but the contrary.   The remedy which that act furnishes was probably designed as a substitute for the usual bill to reform a deed, and it was not intended to extend the investigation beyond what is customary in such cases.

The inquiry enjoined by the statute relates to the conduct of the executor or administrator at the time of the sale, with which it may be reasonably supposed the purchaser may be acquainted.   It cannot be extended to their previous acts, which are unknown to the purchaser, except so far as they appear upon the record, which by a legal fiction, and it is nothing but a fiction, is supposed to be known to the world.   The fraudulent conduct of an executor or administrator at any time, so far as it may be known to the purchaser at the time of the sale, and of course his own acts, which had any thing to do with it, are fit subjects for investigation.   As Philip Tunison the purchaser was the testamentary guardian of one of the devisees of the land in dispute, it was his duty to ascertain the facts, and he may well be supposed to have been acquainted with them, and it was therefore proper to go into the inquiry as to the fairness of the conduct of the executor in the proceedings before the surrogate.   If those proceedings were regular and warranted by the statute, so far as they are represented by the record, (as they were,) it was incumbent upon the party alledg-

Bostwick *v.* Atkins.

ing unfairness to prove it affirmatively; and the case so far as it relates to any alledged misconduct previous to the sale must be examined upon that principle. [The judge here considered upon the evidence the proceedings, previous to the sale, and stated as his conclusion that up to the time of the sale he saw nothing indicating fraud or unfairness. He then proceeded.]

Then as to the sale itself. It is alledged generally in the bill that the executors sold the land in question to Philip Tunison, and the answer admits that the sale was made to him as in the bill stated, without stating any objection to the manner in which it was made. No fraud or any thing improper in the actual sale is any where alledged or proved. On the contrary it is stated in the master's report (to which no exception was taken) that the land was sold for its full value.

It is objected that the avails of the sale were not properly applied. That is a matter which has nothing to do with the fairness of the sale and certainly could not vitiate it. But there was nothing fraudulent in the appropriations, although they may not have been wholly correct. It was right to pay the balance of the debts, although it may have been due to the purchaser. It was also proper for the guardian of one of the devisees to pay his part of the balance, after satisfying the defendants, towards his support and education. There was undoubtedly a misapplication of that part of the purchase money which belonged to the other devisee, and for that she had a claim against the executor, and possibly under the circumstances against the purchaser.

The strongest objection to the purchase in this case is that it was made by the testamentary guardian of one of the devisees. That however is applicable solely to the estate of the ward, not to that of his sister to whom the purchaser did not stand in any fiduciary relation. It is no answer to this objection to say that the ward had another guardian appointed by the surrogate for the express purpose of representing his interests in that particular transaction. That did not relieve the general guardian from his duty to attend to the interests of his ward, which had been solemnly confided to him by the will of the

father.   The law, for obvious reasons, discourages any transac-
tion of a trustee by which he puts his own interest in compe-
tition with those of his cestui que trust.   (*Davoue* v. *Fanning*,
2 *John. Ch.* 252, *and the cases cited.*)   If a guardian purchases
the land of his ward, however clear from actual fraud the sale may
be, its validity is at the election of the ward.   It is not, however,
*ab origine*, absolutely void.   The ward may sanction it and
thereby render it effectual, if he elects to do so.   His sanction
may be expressed by him in direct terms, or it may be inferred
from his conduct.   In this case the master reports that John L.
Tunison the ward was present when both of the lots sold by the
executor were run out in pursuance of the sale, and at that
time and on other occasions approved of it.   He knew too that
a large part of the avails had been expended in his support and
education, and, as but for those means his education must have
been neglected, that the transaction had proved highly beneficial
to him.   If under those circumstances he had intended to repu-
diate the sale he should have done so promptly.   Instead of
adopting that course he suffered the deed to remain unimpeach-
ed, and the persons claiming under it to retain peaceable pos-
session of the land which it purported to convey, from 1818,
when he came of age, until 1836, when the action of ejectment
to which he was a party was instituted.   During this period
the original purchaser died, the land was then sold and convey-
ed, extensive and valuable improvements had been made, and
the last purchaser was no doubt ignorant of the circumstances
attending the executor's sale, and had every reason to suppose
that it was valid.   So long an acquiescence by the ward under such
circumstances clearly raises the inference that he had waived
any objection to the sale arising from the confidential relation
existing between himself and the purchaser, and there is no just
principle which sanctions his attempt at this late day to revive it.

We all think that the investigation under the statute (in-
dependently of the question of jurisdiction) should be limited
to the fairness and good faith of the sale, and that the *case of
Hemiup*, so far as it goes to sanction an inquiry into the regu-
larity and propriety of the proceedings before the surrogate,

anterior to the order for a sale, and whether such order was warranted by the facts, can not be sustained. Upon the point whether the question as to the jurisdiction of the surrogate can be involved in the proceedings under this act, we are so far di vided in opinion that our determination of this case can not be considered as an authority either way.

The act authorizes the court to make such order for the confirmation of the sale and conveyance as may be deemed equitable. The main object is to remedy a defect (the omission to insert the order for a sale) in the deed, and as the inquiry is limited to the fairness and good faith of the sale, the parties should not be precluded by the decree from subsequently contesting other matters. The decree, if favorable to the plaintiff, should therefore confirm the sale and conveyance with the like effect as if the surrogate's order had been inserted in the deed.

As we think that the sale in question was made fairly and in good faith, the decree of the supreme court must be reversed. The vice chancellor also erred in awarding injunctions to restrain the defendants from the further prosecution of the actions of ejectment, and in not restricting the effect of his decree to the relief which was principally designed by the act, and which alone can be equitably granted. Both decrees must therefore be reversed, and a new decree must be entered confirming the sale and conveyance in the manner and with the effect which I have indicated.

And thereupon the following decree was entered :

This cause having been argued by Mr. B. Davis Noxon, counsel for appellants, and by Mr. A. Gibbs, counsel for respondents, and due deliberation having been thereupon had, *It is ordered,* adjudged and decreed, that the decrees made in this cause by the vice chancellor of the sixth circuit and by the supreme court be in all things reversed and annulled ; and it is *further ordered,* adjudged and decreed, that the sale and conveyance to Philip Tunison under the order of the surrogate of the county of Seneca, mentioned in the pleadings in this cause,

be, and the same are hereby ratified and confirmed so far, and so far only, as to make the said sale and conveyance of the like force and effect as they would have been had the order of the surrogate directing the sale been set forth at large in the conveyance. All other questions concerning the proceedings, sale and conveyance are left to be settled according to the rights of the parties as they may be adjudged by the courts of law.

It is also ordered that the record and proceedings be remitted to the supreme court, there to be proceeded upon according to law.