HUNTER REALTY CO. *et al. v.* SPENCER *et al.*

No. 2004, Okla. T. Opinion Filed May 14, 1908.

(95 Pac. 757.)

1. **APPEAL—Review—Findings by Court.** In a cause tried to the court, a general finding includes the finding of all facts necessary to constitute the claims of the party in whose behalf the judgment is rendered, and upon appeal the court will not review the evidence upon which such finding is made to determine its sufficiency.

2. **DEED—Delivery—Necessity.** No title will pass by a deed which is not delivered by the grantor or some one duly authorized by him.

3. **ESCROW—Non-Performance of Conditions.** Where possession of an escrow is obtained, without performance of the condition upon which a delivery to the grantee was to be made, no title passes.

4. **PRINCIPAL AND AGENT—Contracts—Public Policy—Validity—Acting for Both Parties.** Where an agent acts for both parties in

making a contract requiring the exercise of discretion, the contract is contrary to public policy, and voidable in equity upon the application of either party.

(Syllabus by the Court.)

*Error from District Court, Garfield County; before John L. Pancoast, Judge.*

Action by Martha Spencer and others against the Hunter Realty Company and others. Judgment for plaintiffs, and defendants bring error. Affirmed.

The pleadings and proof in this case disclose that on March —, 1903, Martha Spencer, defendant in error, plaintiff below, was the owner of a quarter section of land in Garfield county where she lived; that Daisy Hutto was the owner of lots 1 and 2, block 44, in Okeene, Blaine county, upon which was built a hotel, in which she lived; that Thomas B. Cooper lived near Mrs. Spencer in Garfield county, and owned 180 acre of land in Texas county, Mo.; that Harry N. Horner and J. E. McCarty were partners in the real estate business in Enid, Okla., under the name of the Hunter Realty Company. That about that time Martha Spencer listed her farm, worth $3,500, for sale with the Hunter Realty Company on commission; that shortly thereafter Horner went to the home of Mrs. Spencer, and told her that he had a good trade for her, and got her to go with him to Okeene to see the hotel property belonging to Daisy Hutto, worth some $1,500, which he said he could trade her farm for, and which he represented to be worth $5,500, and that it was leased for $75 per month, and one month's rent would be due in a few days; that she went with Horner, and after a hurried inspection of the hotel property returned with him to Enid. Late that night she was induced by him to sign a contract binding herself, in substance, in consideration of a transfer of the hotel property from Daisy Hutto to herself, together with its fixtures and furniture, as per invoice thereto attached "and a lease to D. A. Skillen until January 1, 1904, at the rate of $75 per month rent,

and assignment of $1,500 insurance," she would convey her farm by warranty deed, "except a mortgage of $500, which first party assumes," and first party "agrees to pay for second party debts to the amount of $460 in cash, and the second party agrees to give to the first party a mortgage on lots one and two, block forty-four and the furniture in the hotel  *  *  *   as security for the debts and $500.00 evidenced by a mortgage on the farm herein described, total of mortgage to be $960, on the Okeene property, with interest, etc.,  *  *  *  and to pay all taxes, assessments or impositions that may be legally imposed on said land subsequent to the year 1903." This contract was afterwards signed, "Daisy Hutto, by Her Attorney in Fact, Harry N. Horner;" but the same appears to have been done beyond the scope of his authority, and without her knowledge or consent. It was represented by Horner that this contract was to bind the trade until her brother came up from Caddo county to investigate and advise her in the matter. Her acknowledgment was taken thereto by J. E. McCarty, the other member of the firm of Hunter Realty Company. At the same time, and with the same understanding, she executed a deed conveying her land to Thomas B. Cooper, and both documents were left with said Horner. A few days after, Martha Spencer and her brother went to the office of the Hunter Realty Company, and demanded of McCarty to see the contract and deed. He told them that they were in the bank, and could not be obtained until Horner returned, which would be the following Sunday. She told McCarty to tell Horner when he got back to go no further with the trade, which McCarty agreed to do. That afternoon (March 26th) Horner put the deed on record. They came back in a day or two, and Horner was there. They again demanded the deed, stating that she did not want to trade for the hotel. Horner informed her that she could not get it; that he would not give it up; that the trade had gone too far, and that the deed had been recorded.

In the meantime, while Horner was acting as the agent of Mrs. Spencer, but unknown to her, he was trying to manipulate

a three-cornered trade, and had arranged with Daisy Hutto to exchange her hotel property for 180 acres of land, belonging to Thomas B. Cooper, in Missouri, and $1,000 "to boot," $100 of which was to go to Horner as commissions, she to deed her property to Mrs. Spencer. With this understanding said deed was placed by her in escrow in the Citizens' Bank at Enid, under the terms of an instrument of writing as follows:

"Enid, O. T., March 30, 1903.

"This deed is deposited by Daisy Hutto to be held by this bank until the abstract for 180 acres of land, S. $\frac{1}{2}$, N. E. $\frac{1}{4}$ and N. $\frac{1}{2}$, S. E. $\frac{1}{4}$ and a part of Sec. 26, Twp. 30, R. 11 is brought down to date and approved by her agent, A. M. Horner, of Lawndale, and returned to the bank with instructions, then to be turned over to Harry N. Horner upon the delivery of a deed to above described land and $900 in cash. [Signed] A. M. Horner, Attorney in Fact for Daisy Hutto. Harry N. Horner."

Indorsed across the face: "March 30, 1903, I acknowledge receipt of the deed herein described. [Signed]    A. M. Horner."

In the meantime, and as his agent, Horner arranged with Thomas B. Cooper to exchange his land for that of Mrs. Spencer, by receiving her deed, obtained as aforesaid, and executing a deed to his land to Daisy Hutto, and giving her $1,000 "to boot," With this understanding his deed, mentioned in the escrow, was turned over to A. M. Horner, agent of Daisy Hutto, that same day, for the purpose of bringing down the abstract to show title in her, and his receipt indorsed thereon. Cooper's abstract proving unsatisfactory, A. M. Horner, agent for Daisy Hutto, wrote:

"Cunningham, Kan. April 22, 1903: Citizens, Bank, Enid, Okla. I have returned to Harry N. Horner abstract and quitclaim deed to 180 acres of land in Texas county, Missouri, after having had the abstract to same examined, and find the title not satisfactory. Please return to me the deed to property in Okeene, O. T., from Daisy Hutto to Thomas B. Cooper, and oblige, yours respectfully, [Signed]                A. M. HORNER.

To the letter returning abstract Horner replied:

"Hunter Realty Co., Enid, Okla., April 23, 1903. A. M. Horner, Esq., Lawndale, Kan. Dear Sir: Your letter received

containing abstract. Now this deal was made and you accepted the deed to the Mo. land. Of course Mr. Cooper guarantees the title, and he is amply able to make it all good, and the title to the hotel has passed to a third party, and I cannot see at this time how all these changes can be as they once stood. A. cannot call the deal off. I will see Mr. Cooper as soon as possible. Yours truly, [Signed] HARRY N. HORNER."

About the time he received the letter returning the abstract, Horner went to the Citizens' Bank of Enid, and in violation of the escrow surreptitiously obtaining the deed from Daisy Hutto to Mrs. Spencer, and placed the same on record, leaving at the same time a check for the $900 mentioned in the escrow, but which was never accepted by Daisy Hutto. As a matter of fact he received $1,500 from Cooper on this deal, $1,000 of which was to be paid to Daisy Hutto, of which she was to give him $100, as commission. He retained, by this arrangement, said $100, and $500 from Cooper, making $600 net to him, as commission paid by the two.

Shortly before this time Horner was having trouble with Mrs. Spencer, who was pressing him to explain why he had placed her deed on record, and wanted to get it back. He told her the hotel was standing open and vacant. Any one could steal what they wanted out of it; that she had better close the deal and take the hotel, or else she would gain nothing; that he would sell it to advantage for cash; that she would thereby avoid a lawsuit; that he wanted $150 from her for commission, but finally agreed to take $100; that just as soon as she signed the mortgage on the hotel property, she would get a deed to it; that she owed Cooper for paying off the $500 mortgage on the farm, and for paying off the one to Fleming for $150, and prepared a mortgage for $650 on the hotel property for her to sign, payable to J. E McCarty, which she did, but nowhere in the record does it appear that Cooper ever paid said mortgage, as represented, or assumed its payment, or that Mrs. Spencer ever got a deed to the Hutto property. Horner further claimed that certain taxes remained unpaid, whereupon she was induced to sign the following:

"Hunter Realty Company. Farm and City Property. Farm Loans a Specialty. Enid, Oklahoma, April 17, 1903. This agreement, made and entered the day and date above written by and between Martha Spencer, first party, and Harry Horner, a partner in the Hunter Realty Company, representing Thomas B. Cooper and Daisy Hutto, second parties, witnesseth: That in consideration of a full and complete settlement made by all parties hereto, that in exchange of property, that Martha Spencer is to assume and agrees to pay the taxes for the year 1902 on L. 1 and 2, B. 44, city of Okeene, known as 'Okeene Hotel,' and that the second parties, through their agent, agrees to assume to pay the taxes on the S. W. ¼ Sec. 17, Twp. 23, N. R. 4 W. I. M. and pay a mortgage on the land herein named ·for $150.00 held by· O. J. Fleming.

"[Signed:]   ·             MARTHA SPENCER,
                             "HARRY N. HORNER."

Nowhere in the record does it appear that possession of any of the property purported to be traded for changed hands. After the abstract of the Cooper land had been rejected by Daisy Hutto she tendered back a quitclaim deed thereto, and upon the same being refused, on May 4, 1903, brought suit against all parties in interest ·to clear her title, which, by consent of all parties, was, on October 21, 1903, taken on a change of venue to the district court of Garfield county. On May 11, 1903, Martha Spencer having filed her suit in the district court of Garfield county against all parties in interest for the same purpose, by order of court these cases were consolidated, and tried to the court and resulted, in a decree on May 25, 1905, granting Daisy Hutto and Martha Spencer sweeping relief, in effect, canceling the deeds of Spencer to Cooper and Hutto to Spencer, and decreeing that Martha Spencer "pay to Thomas B. Cooper the sums of money paid upon liens and mortgages against her land, amounting to the sum of $273,44," from which decree Harry N. Horner, J. E. McCarty, and Thomas B. Cooper have appealed, and the same is before us on case-made.

*Manatt & Sturgiss* and *Roberts & Curran,* for plaintiffs in error.

*J. M. Dodson,* for defendant in error Spencer.

*C. C. Calkins,* for defendant in error Hutto.

Turner, J. (after stating the facts as above.)   The principal contention of plaintiffs in error is that the trial court erred in overruling their motion for a new trial, and under this head contend that the judgment is contrary to the law and the evidence. Let us see how this is.   There was a general finding in this case by the trial court in favor of the defendants in error, plaintiffs below.   When this is the case, the rule is as laid down in the syllabus in *Brewer v. Black,* 5 Okla. 57, 47 Pac. 1089:

"A general finding includes the finding of all necessary facts to constitute the claim of the party in whose behalf the judgment is rendered; and upon appeal the court will not review the evidence upon which such finding was made, to determine its sufficiency."   (See, also, *Meyer Bros. Drug Co. v. Kelley,* 5 Okla. 118, 47 Pac. 1065.)

It goes without saying that Horner was guilty of the grossest fraud, while acting as the agent of Martha Spencer, to induce her to believe that it was to her interest to trade her farm, worth $3,500, for the hotel property of Daisy Hutto, worth $1,500, and agree to give her a mortgage theron for $960, $460 of which was to reimburse her for paying certain indebtedness of Mrs. Spencer. She had a right to and did rely upon his judgment in the matter, and executed a deed to Cooper with the understanding that the same was not to be delivered until she could be further advised by her brother.   It also goes without saying that, when she later visited Horner's office and left instructions for the sale to be proceeded with no further, the subsequent recording of her deed by Horner passed no title to Cooper, for the reason that no title will pass by a deed which is not delivered by a grantor or one duly authorized by him.   *Fitch v. Bunch,* 30 Cal. 209; 1 Devlin on Deeds, §§ 261, 262.   Neither did the title pass from Daisy Hutto to Mrs. Spencer for the reason that the terms of the escrow were

not complied with. 1 Devlin on Deeds §§ 322, 323; *Hogueland v. Arts*, 113, Iowa, 634, 85 N. W. 818; *Fitch v. Bunch, supra,* It follows that the minds of these parties did not meet, and that their respective deeds constituted a cloud upon their respective titles.

But, independent of anything we have said, it is apparent from the record that Harry N. Horner and J. E. McCarty, partners doing business as the Hunter Realty Company, were acting as agent for all concerned in this "triangular transaction." In fact, Horner expressly admits such to be the case, when he testifies:

"Q. You were agent for Daisy Hutto in this transaction, were you?. A. Yes, sir; for them all, Mrs. Spencer, Daisy Hutto, and Cooper."

That being true, this entire transaction, independent of the question whether any of the parties thereto were injured, was against public policy, and voidable in equity at the suit of any of the parties thereto.

In Am. & Eng. Enc. of Law, p. 1073, it is said:

"When an agent acts for both parties in making a contract requiring the exercise of discretion, the contract is voidable in equity upon the application of either party. * * *" (Citing authorities.)

In *Ramspeck v. Pattillo,* 104 Ga. 772, 30 S. E. 962, 42 L. R. A. 197, 69 Am. St. Rep. 197, the court, quoting approvingly from *Farnsworth v. Hemmer,* 1 Allen (Mass.) 449, 79 Am. Dec. 756, says:

"It is of the essence to his [the agent's] contract that he will use his best skill and judgment in promoting the interest of his employer. This he cannot do where he acts for two persons whose interests are essentially adverse. He is therefore guilty of a breach of his contract. Nor is this all. He commits a fraud on his principals in undertaking, without their assent or knowledge, to act as their mutual agent, because he conceals from them an essential fact, entirely within his own knowledge, which he was bound, in the exercise of good faith, to disclose to them. Storey on Agency, § 31; *Copeland v. Mercantile Ins. Co.,* 6 Pick. (Mass.)

198-204; *Pugsley v. Murray,* 4 E. D. Smith (N. Y.) 245; *Rupp v. Sampson,* 16 Gray (Mass.) 398, 77 Am., Dec. 416. See, also, Mechen on Agency, §§ 66, 67."

In *McKinley v. Williams,* 74 Fed. 94, 20 C. C. A. 312, the court said:

"To permit the agent of a vendor to become interested, as the purchaser or as the agent of a purchaser, in the subject-matter of the agency inaugurates so dangerous a conflict between duty and self-interest that the law wisely and peremptorily prohibits it. An agent of a vendor, who speculates in the subject-matter of his agency, or intentionally becomes interested in it as a purchaser, or as the agent of a purchaser, violates his contract of agency, betrays his trust, forfeits his commission as agent, and becomes indebted to his principal for the profits he gains by his breach of duty." (Citing a number of authorities.)

In *N. Y. Central Ins. Co. v. Nat. Protection Ins. Co.,* 14 N. Y. 91, Mr. Chief Justice Denio, speaking for the court, says:

"It has been settled, by a long course of adjudications in the courts of equity, that a trustee or agent of one person cannot make a valid contract respecting the subject-matter to which the trust or agency relates, where he has a personal interest. His constituent, it is said, is entitled to have all his skill and judgment employed in his service, but if he is himself the other party to the contract, the utmost which could be expected from a very honest man would be the ordinary fairness of an umpire.  *  *  * The courts of this state have followed the principle of these cases with great consistency, and the rule may be considered perfectly well settled. *Torrey v. Bank of Orleans,* 9 Paige, 663; *Van Epps v. Van Epps,* Id. 237; *Hawley v. Cramer,* 4 Cow. 736; *Bostick v. Adkins,* 3 N. Y. 53.  *  *  * The precise case of one person assuming to act as the agent of both parties has been considered as within the rule. *Copeland v. Mercantile Ins. Co.,* 6 Pick. (Mass.) 198; Story on Agency, § 211; Paley on Agency (by Dunlap) 33, and note 3; *Ex parte Bennett,* 10 Ves. 381."

In *Blood v. Le Serena L. & W. Co.,* 113 Cal. 221, 41 Pac. 1017, 45 Pac. 252, the court say:

"That a broker cannot represent both parties to a contract of sale, in which discretion, judgment, and skill had to be exercised by him, unless they have knowledge of his double capacity, and

consent to be so represented, and that a party led unwittingly into a contract by means of such double agency may avoid the contract by methods suitable to the circumstances of the case are propositions not to be denied. *Empire State Ins. Co. v. Am. Cent. Ins. Co.,* 138 N. Y. 446, 34 N E. 200, and cases cited; *Cassard v. Hinman,* 6 Bosw. (N. Y.) 8; *Hunsaker v. Sturgis,* 29 Cal. 142; *Davis v. Rock Creek Co.,* 55 Cal. 359, 36 Am. Rep. 40."

In *Black v. Miller,* 71 Ill. App. 344, the court, quoting approvingly from Story on Agency, § 211, says:

"Hence, it is well settled that an agent employed to sell cannot become the purchaser, and an agent employed to buy cannot himself be the seller. And upon the same principle it is held that a contract, made by one who acts as the agent of both parties, may be avoided by either principal. * * * 'The question in such cases does not turn upon the point whether there was an intention to cheat, or whether the purchaser has suffered an injury. It is upon the ground of public policy that the law declares such a purchase fraudulent. * * *' And for that reason our Supreme Court has repeatedly held that an agent cannot, either directly or indirectly, have an interest in a sale of property of his principal which is within the scope of his agency, and that it is immaterial in such case that no fraud was actually intended."

Mechem on Agency, § 66, says:

"An agent owes to his principal a loyal adherence to his interests, and it would be fraud upon the principal, and would contravene the public policy, to permit an agent, without the full knowledge and consent of his principal, to enter into a relation involving such a duty, when his allegiance had already been pledged to one having adverse interests. * * *" (Citing authorities.)

It follows that the decree of the lower court must be affirmed, and it is so ordered.

All the Justices concur.