## SKIRVIN v. GARDNER *et al.*

No. 2442.   Opinion Filed January 7, 1913.

(129 Pac. 729.)

1.   **BROKERS**—Commissions—Agent for Both Parties—Petition.   A petition for the recovery of commission for the sale of real estate, which on its face shows that the plaintiff, a real estate agent, was to reserve a commission from both purchaser and seller, to be good as against a general demurrer, must contain the allegation that such relationship was known by both parties, and that they both assented thereto.

2.   **SAME**—Action for Commissions.   An agreement that has for its purpose, or which necessarily results in, the accomplishment of a wrong, or which tends to produce disloyalty or unfaithfulness, to those persons whose interests a fiduciary has in charge, will not be enforced by the courts of this state.

(Syllabus by Robertson, C.)

*Error from Superior Court, Oklahoma County;*
*A. N. Munden, Judge.*

Action by C. J. Skirvin against R. H. Gardner and another, constituting Pryor-Gardner & Co.   Judgment for defendants on demurrer, and plaintiff brings error.  Affirmed.

The petition in this cause alleges, in substance, that defendants were a firm of real estate brokers; that plaintiff was negotiating for the purchase of a farm from one Mrs. M. G. Addington, said farm being of the value of $13,000; that defendants learned of said negotiations, and thereupon sought plaintiff and orally represented that they could purchase the said farm as cheaply from Mrs. Addington as plaintiff, and could, in addition thereto, induce Mrs. Addington to pay them a commission for the sale of said farm, and orally promised plaintiff that, if he would purchase said farm through said defendants, they would

divide the commission and give plaintiff one-half thereof; that plaintiff, relying on said oral promises, agreed to and did purchase said farm from Mrs. Addington, and did induce Mrs. Addington to sell the same through the agency of the defendants, plaintiff paying Mrs. Addington therefor the sum of $13,000, and in addition Mrs. Addington was to pay defendants for their services in selling said farm the sum of $600; that thereby defendants became indebted and bound to pay plaintiff one-half of said $600; that said sum is due and owing and unpaid, etc. Defendants challenged the sufficiency of the petition by a general demurrer, which was sustained by the court. Plaintiff refused to plead further, but elected to stand on his demurrer, whereupon the court entered an order dismissing his petition, with costs, from which order he appeals.

*Claud W. Stringer,* for plaintiff in error.

*John H. Wright* and *Clarence J. Blinn,* for defendants in error.

Opinion by ROBERTSON, C. (after stating the facts as above). It will be observed that defendants "sought the plaintiff and orally represented and promised the plaintiff that they (the said defendants) would be able to purchase said farm as cheaply, from the said Mrs. M. G. Addington, as the plaintiff could and would, in addition thereto induce the said Mrs. M. G. Addington to pay them a commission for the sale of said farm, and orally promised and agreed with the plaintiff that, if he would purchase said farm through the said defendants, Pryor-Gardner & Co., they would divide the commission upon the purchase with the plaintiff, and give the plaintiff one-half thereof." Case-made, p. 2. Thus it is seen the plaintiff was not induced to enter this oral contract with defendants in order that he might obtain the farm from Mrs. Addington at a sum less than she had offered it to him, or for less than it was really worth. It was understood by the parties that Pryor-Gardner & Co. could purchase the farm from Mrs. Addington as cheaply as plaintiff could. Plaintiff could also purchase it just as cheaply without

the intervention of the real estate brokers.   Hence the only rea-
son why he agreed that defendants might make the sale was that
he might obtain one-half the commission, and thus indirectly,
but at the cost of Mrs. Addington, reduce the purchase price
of the farm.

Of course it is not shown by the petition that Mrs. Adding-
ton had, or had not, been advised of the two-faced character of
her agents.   It may be that she knew they were to divide the
commission, but it is more probable that she did not.   Under the
doctrine laid down by this court in *Plotner v. Chillson & Chill-
son,* 21 Okla. 224, 95 Pac. 775, 129 Am. St. Rep. 776, it occurs
to us that, where a petition shows that an agent, or broker, is
obtaining commission from both parties, it must affirmatively
appear that both parties knew his relationship and assented there-
to.   The opinion in the above case does not state this rule in
positive words, yet it is impossible to avoid such inference.   At
any rate, the effect of such a contract, as that shown to exist
between the plaintiff and defendants, is to work a civil wrong
against Mrs. Addington.

It is a fraudulent scheme, amounting to a conspiracy, the
sole object of which is to take an undue advantage of one who,
as in this case, was entitled to the unswerving loyalty and hon-
esty of her agent.   If such a contract works a civil wrong, the
courts will not enforce it, for the reason that such conduct, be-
ing reprehensible and unfair, is against public policy.   As was
said in *McKinley v. Williams,* 74 Fed. 95, 20 C. C. A. 313:

"To permit the agent of a vendor to become interested as
the purchaser or as the agent of a purchaser in the subject-
matter of the agency inaugurates so dangerous a conflict be-
tween duty and self-interest that the law wisely and peremptorily
prohibits it.   An agent of a vendor, who speculates in the sub-
ject-matter of his agency, or intentionally becomes interested in
it as a purchaser, or as the agent of a purchaser, violates his
contract of agency, betrays his trust, forfeits his commission as
agent, and becomes indebted to his principal for the profits he
gains by his breach of duty."

In 9 Cyc. 468, it is said:

"An agreement is illegal and void where its object is the

commission of a civil wrong against a third person, although the wrong may not be an indictable offense or crime, either at common law or under the statutes. This is true for an example * * * of an agreement to perpetrate a fraud upon a third person."

An agreement that has for its purpose, or which necessarily results in, the accomplishment of a wrong, or which tends to produce disloyalty or unfaithfulness to those persons whose interests a fiduciary has in charge, will not be enforced by the courts of the state.

We are therefore of the opinion that the judgment of the superior court of Oklahoma county is correct and should be affirmed.

By the Court: It is so ordered.