1999 OK 55

**Kenneth W. SNIDER, Appellant,**

v.

**STATE of Oklahoma ex rel. OKLAHOMA REAL ESTATE COMMISSION;**
Appellee.

**No. 88,917.**

Supreme Court of Oklahoma.

June 1, 1999.

Rehearing Denied Sept. 16, 1999.

Vickie L. Cook, Woodward, Oklahoma, for Appellant.

Philip Holmes, Brent W. Pitt, Philip Holmes, Inc., Oklahoma City, Oklahoma, for Appellee.

ALMA WILSON, Justice.

¶1 The appellant, Kenneth W. Snider, seeks review of the judgment of the district court, which affirmed an order of the Oklahoma Real Estate Commission.[1] The Commission reprimanded Snider and assessed a $200.00 fine for false and misleading statements in an advertising brochure, in violation of 59 O.S.1991, § 858–312(2)[2] and Oklahoma Real Estate Commission Rule 605:10–9–4(a)(5).[3] The Administrative Procedures Act provides a standard of review for this Court in reviewing orders of state agencies.[4] The appellant claims that his substantial rights were prejudiced because the agency's findings, inferences, and conclusions were clearly erroneous in view of the evidence, and were arbitrary and capricious. We agree and accordingly vacate the decision of the Court of Civil Appeals, reverse the judgment of the district court, and set aside the order of the Real Estate Commission.

## I. Facts

¶2 The Oklahoma Real Estate Commission on June 6, 1995, sent Snider a letter accusing him of violating Commission Rule

1. 75 O.S.1991, § 323 provides: "An aggrieved party, or the agency, without any motion for a new trial, may secure a review of any final judgment of a district or superior court under this act by appeal to the Supreme Court. Such appeal shall be taken in the manner and time provided by law for appeal to the Supreme Court from the district court in civil actions. An agency taking an appeal shall not be required to give bond."

2. 59 O.S.1991, § 858–312(2) provides: "The Oklahoma Real Estate Commission may, upon its own motion, and shall, upon written complaint filed by any person, investigate the business transactions of any real estate broker or real estate sales associate, and may, upon showing good cause, impose sanctions as provided for in Section 858–208 of this title. Cause shall be established upon the showing that any licensee has performed, is performing, has attempted to perform, or is attempting to perform any of the following acts: ... 2. Making substantial misrepresentations or false promises in the conduct of business, or through real estate licensees, or advertising, which are intended to influence, persuade, or induce others; ..."

3. Oklahoma Administrative Code, 605:10–9–4(a)(5) provides: "Any advertising in any media which is misleading or inaccurate in any material fact or in any way misrepresents any property, terms, values, services, or policies is prohibited."

4. 75 O.S.1991, § 322(1) provides: "(1) In any proceeding for the review of an agency order, the Supreme Court or the district court, as the case may be, in the exercise of proper judicial discretion or authority, may set aside or modify the order, or reverse it and remand it to the agency for further proceedings, if it determines that the substantial rights of the appellant or petitioner for review have been prejudiced because the agency findings, inferences, conclusions or decisions, are:

   "(a) in violation of constitutional provisions; or
   "(b) in excess of the statutory authority or jurisdiction of the agency; or
   "(c) made upon unlawful procedure; or
   "(d) affected by other error of law; or
   "(e) clearly erroneous in view of the reliable, material, probative and substantial competent evidence, as defined in Section 10 of this act, including matters properly noticed by the agency upon examination and consideration of the entire record as submitted; but without otherwise substituting its judgment as to the weight of the evidence for that of the agency on question of fact; or
   "(f) arbitrary or capricious; or
   "(g) because findings of fact, upon issues essential to the decision were not made although requested."

605:10-9-4(a)(5) by using a booklet in his advertising, entitled "The Buyer's Agent" published by the Buyer's Agent, Inc. The Commission questioned the assertions in the booklet that buyers' agents saved buyers thousands of dollars. The Commission also questioned the statement on the inside back cover of the booklet that, "Beware of any agent who mentions the words 'dual agent,' 'assigned agent,' 'contract broker' [etc.]." The Commission informed Snider that dual agency is permissible in Oklahoma with the knowledge and consent of all parties involved. The Commission cited Rule 605:10-15-2, that an agent can work for a buyer and seller at the same time. Subsection (a) of that Rule provides:

"After July 1, 1990, in every real estate sales transaction involving a licensee, as agent or principal, the licensee must clearly disclose to the buyer and seller the agency relationship(s). The disclosure must be made prior to the buyer and seller entering into a binding agreement with each other; and when a binding agreement is signed, the prior agency disclosure must be confirmed in a separate provision, incorporated in or attached to that agreement."

¶ 3  Snider responded on June 9, 1995, that he was referring the matter to the legal counsel for The Buyer's Agent, Inc. Counsel responded in a letter to the Commission dated, June 12, 1995, that the company kept meticulous records of documented savings, and explained how this was done. Counsel's letter quoted in full the statement on the back cover of the booklet: "Beware of any agent who mentions the words 'dual agent', 'assigned agent', 'contract broker', 'facilitator', 'transaction broker', or 'designated agent'. These are all methods of conducting real estate transactions which give the buyers less than full representation." Counsel replied that the statement was not misleading but entirely true. The letter continued that whether or not dual agency was permissible, dual agents attempt to represent both buyers and sellers and therefore cannot legally fully represent the interests of a home buyer. Counsel asserted that the statement was enlightening to home buyers. Counsel admonished that the duty of real estate commissions is to protect the public, not Realtors nor former Commissioners, and that counsel

could not understand the Commission's statement in the letter to Snider. Counsel cautioned the Commission that this country gave everyone, including the company and its franchisees, the right to express an opinion and to make a truthful statement, whether or not such statement was unpopular. She also related that she was forwarding all communications to the Federal Trade Commission because it was conducting a study of the harassment of buyer brokers in their advertising.

¶ 4  At the August 9, 1995, Commission meeting, the Commission voted to open a formal investigation. The Commission sent a letter to Snider advising him of the formal investigation, and that the decision was based on information indicating that his advertising could be misleading, inaccurate and could misrepresent services provided by real estate agents. On November 1, 1995, the executive director of the Commission sent a letter to Snider's attorney listing the representations in the booklet that the Commission considered false or misleading. Nothing on the list mentioned the dual agent warning from the booklet. A preliminary investigation was held and portions of the booklet were cited which the case examiner concluded may have been in violation of the Oklahoma Real Estate License Code. One of the references states, "Page 14 [of the booklet] contains a warning to buyers against the use of other types of licensees." After the report of the case examiner was presented to the Commission, it voted to set a formal hearing, and subsequently gave notice to Snider.

¶ 5  The formal hearing before a hearing examiner was held on May 7, 1996. The examiner in his report to the Commission recited the allegations including the falsity of the booklet's reports of savings by clients using The Buyer's Agent in purchasing homes. But Snider had presented signed statements from the actual buyers whose savings were documented in the booklet. They affirmed that they had saved the amounts advertised. Also before the hearing examiner was the allegation that the statements in the booklet contrasting tasks done by "traditional agents" with tasks "always performed" by The Buyer's Agent were false

and misleading. The hearing examiner noted that the State did not present evidence to indicate that these statements were false or misleading. Finally, the hearing examiner quoted the dual agent statement from the booklet and concluded, "The last sentence is false and misleading on its face in that it indicates that the 'agents' referred to always give buyers less than full representation." The hearing examiner concluded that Snider had violated 59 O.S.1991, § 858–312(2), and Oklahoma Real Estate Commission Rule 605:10–9–4(a)(5). The hearing examiner recommended that Snider be formally reprimanded and fined $200.00.

¶ 6 Snider filed with the Commission a written exception to the final order. Snider asserted that at the beginning of the May 7, 1996, hearing, the hearing examiner announced the issues that were to be discussed and decided on that day based upon the complaint filed earlier. The issue of whether the statement from the booklet was misleading and false, was not one of the issues the hearing examiner announced would be discussed. Snider added that no evidence was presented to show that the statement was misleading or false, and he affirmatively asserted that the statement was true. Nevertheless, the Commission followed the recommendations of the hearing examiner and on July 10, 1996, ordered that Snider be formally reprimanded and fined $200.00.

¶ 7 Snider appealed to the district court, which stated in its order, "That the primary basis upon which the finding was made did not deal with the dual agency question at all, but dealt with the advertised thousands of dollars saved to purchasers." The court found that the publication included advertising that was misleading or could be misleading to the general public, and that there was no basis in law upon which the court could set aside the findings and order of the Commission. It therefore affirmed the July 10, 1996, order. Snider then appealed, and the Court of Civil Appeals affirmed the order. We have previously granted certiorari.

¶ 8 Both the appellate courts and the district courts review the entire record made before an administrative agency acting in its adjudicatory capacity to determine whether the findings and conclusions in the agency order are supported by substantial evidence and by applicable law.[5] If the order is supported by substantial evidence it will be affirmed.[6]

¶ 9 In contrast to the requirement that an order be supported by substantial evidence to be affirmed, no evidence supported the order of the Commission, which adopted the report of the hearing examiner that the last sentence of the booklet was misleading. The district court was also in error by rejecting the alleged misleading statement concerning dual agency as a basis for Snider's discipline and finding statements from the booklet regarding savings by clients of The Buyers Agent, Inc., to be misleading. The hearing examiner received evidence on those savings and based on that evidence, did not find the statements concerning savings to be misleading.

¶ 10 The Commission argues, "Whether the advertisement of Mr. Snider stating that other agents provide less than full representation is misleading is a question to be determined by the Commissioners in the exercise of their expertise." The Commission's brief cites *City of Hugo v. State ex rel. Public Employees Relations Board,* 1994 OK 134, 886 P.2d 485, concerning the great weight to be accorded the expertise of an administrative agency, and the presumption of validity attaching to the exercise of expertise. The Commission, however, gives no reason why its expertise in real estate matters should be upheld when its finding is supported by merely a bald statement that the advertising is false and misleading on its face. The Commission's full finding on the issue reads: "That Respondent Kenneth W. Snider made false and misleading statements in an advertisement in that he stated that certain agents always provide less than full representation to buyers." No further explanation is given,

5. 75 O.S.1991, § 322(1)(e); *City of Hugo v. State ex rel. Public Emp. Relations Bd.,* 1994 OK 134, ¶ 22, 886 P.2d 485, 495; *Dugger v. State ex rel. Okla. Tax Com'n,* 1992 OK 105, ¶ 9, 834 P.2d 964, 968.

6. *Dugger,* 1992 OK 105, ¶ 9, 834 P.2d at 968.

and no reasons cited for finding the language to be false and misleading. We are not required to rubber stamp an adjudicatory order of an administrative agency, nor do we accept the premise that the Commission's expertise is necessary to determine whether the statement in the advertisement for which Snider was disciplined is false and misleading.

■ ¶ 11 A review of the entire booklet from which the statement found false and misleading is taken reveals one premise. That premise is stated on page 2 of the booklet, and is that traditional real estate firms represent the seller, and that when they try to represent the seller and the buyer, they cannot meaningfully represent both. Page four of the booklet states that "By law, selling agents must negotiate in the best interest of their clients, not withhold information from them, and must present their property in a favorable manner." It uses the illustration that one would not go to court using the same attorney who represents the opposing side. The booklet explains its reasons for these statements and the advantage to a buyer who is represented by an agent. The information in the booklet continuously refers to the law of agency. Agency law is not an area in which the Oklahoma Real Estate Commission can claim expertise superior to the courts of Oklahoma.

■ ¶ 12 The challenged sentence is the last statement in the booklet, which was attached as an exhibit to the appellant's brief to the trial court. The entire booklet was also copied and attached as an exhibit in the Record of Proceedings before the Real Estate Commission. The booklet clearly expresses that an agent for the seller in a real estate transaction, or a dual agent representing both the seller and the buyer cannot fully represent the buyer. That conclusion is neither false nor misleading, and is in fact, the law of the State of Oklahoma. It is true that a real estate agent may legally represent both the buyer and seller in a real estate transaction so long as both parties know of the dual representation and give their as-

sent.[7] The reason assent is necessary is the dangers involved for the parties in dual representation. The very purpose of the rule is shown by *Skirvin v. Gardner*, 36 Okla. 613, 129 P. 729 (1913). The facts reveal that the plaintiff was going to purchase a farm for $13,000.00. When the defendants, a firm of real estate brokers learned of the negotiations, they persuaded the plaintiff that they could obtain the farm for the plaintiff at the same price but would split the $600.00 commission with the plaintiff once the sale was complete. The real estate firm then persuaded the seller to sell through the agency of the firm. But when the sale was complete, the real estate firm refused to split the commission with the plaintiff. The trial court dismissed the petition. Upon appeal, the Court found this to be a fraudulent scheme, whose sole object was to take undue advantage of the seller, who was entitled to the unswerving loyalty and honesty of the agent. The Court held that where a petition shows that an agent, or broker, is obtaining commissions from more than one party, it must affirmatively appear that each party knew of this relationship and assented to it.[8] The Court reasoned that permitting an agent of a vendor to become interested as the agent of a purchaser in the subject matter caused a dangerous conflict between duty and self-interest.[9]

■ ¶ 13 Where an agent undertakes to act for both parties to a contract, and the nature of his duties requires the exercise of discretion, the dual representation is contrary to public policy and the contract is voidable upon the application of either party. The exception to this rule is where the parties have knowledge of the dual agency.[10] Dual agents attempt to serve parties with conflicting interests. That is why the law requires that dual agents obtain the informed consent of the parties. In *Hunter Realty Co. v.. Spencer*, 21 Okla. 155, 95 P. 757 (1908), one of the partners in the real estate business attempted to represent three parties in a "triangular transaction." Two of the parties sued, and the district court canceled the

7. *Skirvin v. Gardner*, 36 Okla. 613, 129 P. 729 (1913); *White v. Putnam*, 39 Okla. 148, 134 P. 406, 407 (1913).

8. *Skirvin*, 129 P. at 730.

9. *Skirvin*, 129 P. at 730.

10. *Brockman v. Delta Manufacturing Co.*, 184 Okla. 357, 87 P.2d 968 (1939).

deeds and gave other relief to remedy the wrong. In affirming the district court, the Court held that the entire transaction, independent of the question whether any of the parties were injured, was against public policy, and voidable in equity at the suit of any of the parties.[11] The Court cited with approval cases and authorities holding that the essence of an agent's contract is that he will use his best skill and judgment in promoting the interest of his employer, which he cannot do where he acts for two persons whose interest are essentially adverse, and when he acts without their assent or knowledge as their mutual agent, he commits a fraud on his principals.[12]

¶ 14 The statutes provide for sanctions for a real estate agent who acts as a dual agent without disclosing that fact. Title 59 O.S.Supp.1998, § 858–312(3) provides that the Real Estate Commission may impose sanctions pursuant to 59 O.S.Supp.1998, § 858–209, against any real estate licensee who acts for more than one party in a transaction without the knowledge of all parties for whom the licensee acts. In this manner, the legislature has also recognized the dangers involved in dual agency.

· [6] ¶ 15 In the traditional, historical relationship a real estate agent was the agent of the seller, and this agency did not extend to the buyer, even though both parties received and relied on information from the agent.[13] The buyer was not represented.[14] The problem with the traditional relationship is that unsophisticated buyers negotiate with brokers who have little or no duty to protect buyers' interests.[15]

¶ 16 With residential real estate transactions, "it is a widely accepted rule of agency law that a real estate broker operating under an exclusive listing contract with the seller of the property stands in an agency relationship to the seller." [16] The Supreme Court of Colorado observed that the prevailing perception of the broker as an agent of the seller is firmly imbedded in the real estate business, and therefore a written agreement is necessary to establish an agency relationship between a purchaser and a real estate broker or salesperson.[17] One government survey has shown that over 70% of all buyers surveyed believed that the cooperating broker was acting as their agent.[18] This misunderstanding by buyers of whether or not they were being represented by the real estate agent with which they were dealing was apparently significant enough that the Oklahoma Real Estate Commission believed the promulgation of a rule was necessary. Oklahoma Real Estate Commission Rule 605:10–15–2 (1996) provides that in every real estate sales transaction involving a licensee as an agent or principal, the licensee must clearly disclose to the buyer and seller the agency relationship or relationships.

¶ 17 We find that the statement in the booklet for which the appellant was sanctioned is neither false nor misleading. Sellers' agents and dual agents do not and cannot by law give a buyer the same degree of loyalty as an agent who acts on behalf of a buyer. Sellers' agents owe their allegiance to the seller. Dual agency invites a conflict of interest.[19] A buyer who relies on the

---

**11.** *Hunter Realty Co. v. Spencer,* 21 Okla. 155, 95 P. 757, 760 (1908).

**12.** *Hunter Realty Co.,* 95 P. at 760.

**13.** J. Bryant & D. Epley, *The Conditions and Perils of Agency, Dual Agency, and Undisclosed Agency,* 21 Real Est.L.J. 117, 118 (1992).

**14.** *Id.*

**15.** *Id.* at 126.

**16.** *Stortroen v. Beneficial Finance Co. of Colorado,* 736 P.2d 391, 396 (Colo.1987). "In a majority of states, the cooperating broker [footnote omitted] (the broker first approached by the buy-

er) is not the buyer's agent. The cooperating broker is considered a subagent of the seller and the listing broker." D. Thomas, 11 *Thompson on Real Property* 513–514 (David A Thomas ed., 1994).

**17.** *Stortroen,* 736 P.2d at 400. Some courts reject the rule that the cooperating broker is the subagent of the seller and of the listing broker. *See, Menzel v. Morse,* 362 N.W.2d 465, 475 (Iowa 1985); *Mead v. Hummel,* 58 Ariz. 462, 121 P.2d 423, 425 (1942).

**18.** D. Thomas, 11 *Thompson on Real Property* 514.

**19.** D. Thomas, 11 *Thompson on Real Property* 517.

seller's agent or on dual agency does not receive the same degree of legal protection as that afforded by an agent acting solely on behalf of the buyer. Accordingly, we find that the order of the Oklahoma Real Estate Commission is clearly erroneous, contrary to its own rule, and without evidentiary support and must be set aside.[20]

¶18 CERTIORARI PREVIOUSLY GRANTED; OPINION OF THE COURT OF CIVIL APPEALS VACATED; JUDGMENT OF THE DISTRICT COURT REVERSED.

¶19 SUMMERS, C.J., HARGRAVE, V.C.J., HODGES, SIMMS, OPALA, and KAUGER, JJ., concur.

¶20 LAVENDER, and WATT, JJ., dissent.

---

**20.** The appellant also raises a First Amendment argument that truthful advertising relating to lawful activities is entitled to First Amendment protection. The above determination of the issues makes our addressing this issue unnecessary. *Smith v. Westinghouse Electric Corp.,* 1987 OK 3, ¶2 n. 3, 732 P.2d 466, 467 n. 3 states the rule that, "The judiciary will not decide constitutional issues in advance of strict necessity. When ... the legal relief sought clearly is affordable upon alternative grounds, consideration of constitutional infirmities is deemed precluded by a self-erected 'prudential bar' of restraint."