CLARENCE W. PERKINS, EXECUTOR, v. CHARLES E.
HERSHEY.

*Principal and agent—Declaration—Inconsistent causes of action—
Verbal promise to pay debt of another.*

1. An agreement by which a party is to loan out to borrowers
   money furnished by another party, at an agreed rate of inter-
   est, he to collect and account for all over one per cent., which
   he is to retain as his compensation, constitutes him an agent
   coupled with an interest, and he is bound to discharge his
   duties with fidelity and good faith towards his principal.

2. An agreement by an agent to stand as security for all loss the
   principal might sustain on loans made by the agent, by reason
   of insufficient security or defect of title, is held not to apply
   to prior loans, nor is evidence of such an agreement admissible
   in a suit against the agent unless specially counted upon.

3. No recovery can be had upon the common counts in *assumpsit*
   for property received by an agent, without authority, in pay-
   ment of the amount due the principal upon a mortgage, the
   principal not having ratified such unauthorized act of the
   agent, nor released the mortgagor from his obligation in reli-
   ance upon the agent's liability or obligation to pay to the prin-
   cipal the avails or value of said property.

4. A declaration in a suit by a principal against an agent averring
   the duty of the agent to pay to the principal certain moneys and
   property received by him upon a mortgage belonging to the
   principal, and sufficient in amount to pay the same in full, and
   also counting upon the promise of the agent that, if the prin-
   cipal would make a sale of the mortgaged premises under a
   decree before then taken on a foreclosure of the mortgage, he
   would pay him any deficiency arising on such sale, sets forth
   two inconsistent causes of action.

5. A verbal promise by an agent to pay the principal any deficiency
   which might arise upon a sale under a foreclosure decree, if
   the principal would make such sale, is void under the statute
   of frauds, the principal being the owner of the decree, and the
   agent being under no prior legal obligation to pay the mortgage
   debt

6. "In many cases the test whether a promise is or is not within
   the statute of frauds is to be found in the fact that the original

debtor does or does not remain liable on his undertaking. If he is discharged by a new arrangement, made on a sufficient consideration, with a third party, this third party may be held on his promise, though not in writing; but if the original debtor remains liable, and the promise of the third party is only collateral to his, it will, in strictness, be nothing more than a promise to answer for the other's debt. But where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not." *Calkins v. Chandler*, 36 Mich. 324. This principle, applied to this case, shows very clearly that the defendant is not liable under his promise to pay the deficiency on the foreclosure sale.

Error to Shiawassee. (Newton, J.) Argued October 10, 1889. Decided November 8, 1889.

*Assumpsit.* Defendant brings error. Reversed. The facts are stated in the opinion.

*Watson & Chapman,* for appellant, contended for the doctrine stated in the opinion.

*W. M. Kilpatrick* and *G. R. Lyon,* for plaintiff, contended:

1. When one person for a valuable consideration engages with another by a simple contract to do some act for the benefit of a third, the latter may maintain an action for the breach of the engagement. The law, operating on the act of the parties, creates the duty, establishes a privity, and implies the promise on which the action is founded; citing *Schemerhorn v. Venderheyden*, 1 Johns. 140; *Canal Co. v. Bank*, 4 Denio, 97; *Farley v. Cleveland*, 4 Cow. 432; *Lawrence v. Fox*, 20 N. Y. 268; *Mallory v. Gillett*, 21 Id. 412; *Arnold v. Lyman*, 17 Mass. 460; *Hall v. Marston*, Id. 574; *Brewer v. Dyer*, 7 Cush. 337; *Stariha v. Greenwood*, 28 Minn. 521; *Clopper v. Poland*, 12 Neb. 69; *Hoile v. Bailey*, 58 Wis. 434; *Calkins v. Chandler*, 36 Mich. 320; *Barker v. Bucklin*, 2 Denio, 45.

CHAMPLIN, J. The declaration in this case contains a special count and the common counts in *assumpsit*. The special count sets out that about the year 1873 defendant became and was agent of William Perkins, deceased, for

loaning money in Shiawassee and adjoining counties, and about July, 1873, defendant received $800 to loan to one Leander Merrill, of Chesaning, Saginaw county, which about that date he loaned to said Merrill upon his note, taking as collateral security a mortgage to said William Perkins upon certain saw-mill property; that the interest was regularly paid by defendant, Hershey, to Perkins as it became due, until his death, which occurred January 9, 1881, and after that event to the plaintiff as executor of the last will of William Perkins, until on or about the year 1885, since which time no interest has been paid.

That the defendant in the year 1876 caused the mortgage to be foreclosed in chancery to the taking of a decree therein, and after, at different times, Hershey received from Merrill large quantities of lumber, timber, and other property to the full amount due for principal and interest on said note and mortgage, which timber, lumber, and other property was delivered to Hershey by Merrill for the purpose of paying and satisfying the note and mortgage, and was of more than sufficient value to pay and satisfy the same, with the understanding with Hershey that such timber, lumber, etc., so delivered, and the avails thereof, were to be applied upon and go to the satisfaction of said mortgage and note; that Hershey, in fraud of plaintiff's rights, retained said lumber, timber, and other material, and the money received therefor, without accounting to or paying over the same, or any part thereof, to Perkins, deceased, in his life-time, or to plaintiff as executor.

That the property covered by such mortgage was of the value of $5,000, and ample security for said sum of $800, and in the year 1885 Hershey represented to plaintiff that said note and mortgage had not been paid by Merrill, as he (Merrill) then claimed, and that if plaintiff would go

on and have the property sold under said decree of fore-closure he (Hershey) would pay to plaintiff whatever deficiency there might be after such sale, and that said plaintiff, relying upon such promises, caused the same to be sold by the circuit court commissioner for the county of Saginaw, on June 20, 1887, and the premises were bid off by plaintiff for the sum of $250, leaving unpaid and due to plaintiff on the note and mortgage, after deduct-ing the $250, a large sum of money, to wit, the sum of $1,100.

That said defendant, wholly ignoring his said promises and undertakings, but contriving and intending to deceive and defraud the said William Perkins in his life-time, and the plaintiff, as executor, in this behalf, has refused to pay the said plaintiff the moneys and properties so received by him from said Leander Merrill in payment and satisfaction of said note and mortgage, or to pay said deficiency, or any part thereof, to plaintiff, although often requested so to do, and the said defendant has become, and still is, indebted to said plaintiff as executor in a large sum of money, to wit, $1,100.

It appears from the plaintiff's testimony that William Perkins entered into an arrangement with Hershey by which Hershey was to loan out to borrowers money furn-ished by Perkins, upon interest, at the rate of 10 per cent., one per cent. of which was to go to Hershey as his com-pensation, and nine per cent. to Perkins; that Hershey would collect the interest, and account to Perkins for his share, and retain the amount due himself. This consti-tuted him an agent coupled with an interest, and he was bound to discharge his duties with fidelity and good faith towards his principal, without fraud or overreach-ing.

At the time the loan was made to Merrill, Hershey did not undertake to guarantee the repayment of such loan,

or to stand as security for its repayment, or for the sufficiency of the security taken as collateral thereto. Plaintiff was allowed to introduce testimony, against defendant's objection, tending to prove that at a later date defendant did undertake to stand as security against all loss for money he should loan for Perkins that might arise from insufficient security or defect of title. The admission of this testimony was an error. No such undertaking was counted on in the declaration, and, if it had been, the testimony would not have been admissible, as this loan was made before any such offer was made by the defendant.

It appears that Hershey forwarded the interest due upon the mortgage, which was payable to Perkins annually, and the same was indorsed upon the note and mortgage, and that in 1876 Hershey claimed that Merrill owed him, and would not pay, and requested William Perkins, who resided at Seneca, Ontario county, New York, to send him the note and mortgage against Merrill, and he would foreclose for not paying the interest when due, in order to force him to pay him, and he would see that Perkins should lose nothing. The note and mortgage were sent, and foreclosure proceedings were commenced about October 2, 1876, in the circuit court for the county of Saginaw, in chancery, in the name of William Perkins, complainant, and against Merrill and his wife and one John Hershey. Such proceedings were thereafter had that a decree was entered by said court on February 14, 1877, for a sale of the mortgaged premises to pay the amount reported due on January 29, 1877, for interest upon the principal, including solicitor's fees, of $380.94. The note and mortgage were filed in the cause, and all indorsements had been erased therefrom.

Testimony was introduced, against defendant's objection, which tended to prove that large quantities of lumber

and timber were delivered to Hershey to be applied upon the mortgage debt; and Merrill testified that in 1877 he settled with Hershey, and it was then agreed that there was $250 then due upon the note and mortgage, and that he should continue to deliver lumber and timber until such balance was paid, and he testifies that he delivered more than sufficient to pay such balance. In the statement as to the amount then due upon the note and mortgage he is corroborated by his brother, Ira Merrill, who testifies that in September, 1878, his brother and Mr. Hershey disagreed as to the amount of lumber which had been delivered, and that they finally came to a compromise, "and agreed to call it $250 now due upon the mortgage." He knew there had been a foreclosure,—that is, he had heard they commenced,—and he asked Hershey if that amount included the costs and interest up to that time, and he said it did. The amount then claimed to be due could not have included the principal of $800, which did not become due until 1879, and the decree was only for the interest due, solicitor's fees, and costs. Whether sufficient lumber was delivered afterwards to pay the mortgage debt in full was, if admissible under the pleadings and facts, a question for the jury. We shall consider this question later on.

In 1881, the interest, at Hershey's request, made to Mr. Perkins, was reduced from 10 to 7 per cent. per annum; and Mr. Hershey continued to pay to Mr. Perkins, and to his executor, the interest to the year 1885. In 1886 the plaintiff first learned that Merrill claimed the mortgage was fully paid. In February, 1887, he saw Hershey in Owosso, and talked with him about the Merrill matter. He testifies that Hershey claimed that it was not paid. Plaintiff wanted Hershey to take an assignment of the decree, and he would take his note for it, due in eighteen months. Hershey refused to do that. He then said, if

plaintiff would go on and have the property sold under the decree, he would pay up the deficiency. Plaintiff asked him if he would put it in writing, and he said he would, but afterwards refused, but said he would do just as he agreed, if he would go on and have it sold under the decree, and be to as little expense as possible. Under the plaintiff's directions, the premises were advertised and sold on June 20, 1887, and bid off by plaintiff for $250. The sale was confirmed, and a circuit court commissioner's deed executed and delivered to plaintiff of the premises covered by the mortgage. Witness Perkins further testified as follows, on cross-examination:

" *Q.* When you were out here, in 1881, Hershey wanted you to take his note for the mortgage?

" *A.* Yes, sir.

" *Q.* You finally refused to do it?

" *A.* Yes, sir.

" *Q.* You thought you would rather have the Merrill mortgage than his note?

" *A.* Yes, sir; I thought it was good.

" *Q.* Your father was dead at that time?

" *A.* Yes, sir.

" *Q.* So you continued to hold the Merrill obligation, and hold them liable on it?

" *A.* It stood as it had before my father's death, up to the change of the per cent.

" *Q.* You never had any agreement with Hershey to receive any lumber for you?

" *A.* No, sir; I don't know anything about the lumber.

" *Q.* You had no agreement with Merril that Merrill should let Hershey have any lumber?

" *A.* I never had seen Merrill at that time.

" *Q.* Did you know anything about the lumber being delivered to Hershey on this mortgage until 1887?

" *A.* Not that I can recollect.

" *Q.* You at no time had any arrangement with Hershey by which he should be your agent to receive money for you?

" *A.* Nothing more than when my father was alive.

" *Q.* Your father didn't make any arrangement with him to receive lumber?

" *A.* No, sir.

" *Q.* So whatever Hershey may have received by way of lumber or timber he received without your knowledge or consent?

" *A.* Yes, sir.

" *Q.* And without any authority from you?

" *A.* Yes, sir.

" *Q. Mr. Kilpatrick.* When did you first learn that Merrill claimed payment of this mortgage?

" *A.* That was in 1886.

" *Q. Mr. Chapman.* Whatever Mr. Kilpatrick or the ones who were handling it did, in 1887, the sale was made by and under your authority,—they had authority to make that sale ?

" *A.* Certainly. We advised on the matter with my attorney, at Penn Yan, and talked it over with Mr. Kilpatrick, and talked it over with my attorney there, and they corresponded, and thought it would be the best way to do.

" *Q.* You sold it ?

" *A.* Yes, sir.

" *Q.* The bid that was made on it was made with your authority ?

" *A.* Why, yes, certainly; they had a right to bid it off for me.

" *Q.* So the sale, in every particular, was your sale ?

" *A.* Yes, sir.

" *Q.* At the time you made this sale you knew the Merrills claimed the mortgage had been paid ?

" *A.* Yes, sir; I was not in the State when the sale was made, and knew nothing about it personally."

Plaintiff further testified that up to 1879 no agreement had been entered into whereby Hershey had agreed to pay the Merrill mortgage, or was liable for it, but that it was his understanding, and his father understood, that Merrill was obligated for this indebtedness; that up to the time of his father's death his father did not rely upon Hershey for the payment of the claim, but his father knew it was Merrill's debt. He further testified as follows:

" *Q.* The first time that there was any reliance upon Hershey for the payment of this debt was the promise he made you in 1887, when he agreed to pay the deficiency?

" *A.* Yes, sir; and that was the first time that either father or I had claimed any liability on the part of Hershey, and that claim was based on the promise he made to me.

" *Q.* Before this time you and your father had always relied upon Merrill to pay that mortgage, hadn't you? (Objected to as incompetent. Objection sustained, and defendant excepted.)

" *A.* When I had the talk with defendant about assigning the decree, I did not have any assignment there.

" *Q.* You bid off the property when it sold,—it was bid off in your name?

" *A.* I think it was,—yes, sir; and I still have the title to that property.

" *Q.* You still hold the decree for the balance that is unpaid, and claim the balance due on it, don't you? (Objected to.)

" *Q.* And claim the balance due on the decree as your property?

" *A.* Why, I suppose so; yes, sir.

" *Q.* That is what you claim, isn't it?"

" *A.* Yes, sir."

No recovery can be had in this case under the common counts in *assumpsit*. No authority existed from Perkins to Hershey to receive lumber and timber in payment of the amount due to him upon the mortgage, and neither he nor his executor have ever, until the commencement of this suit, ratified such unauthorized act of the agent. But they have repudiated it, in so far as they claim the whole amount of principal and unpaid interest is still due to them. The plaintiff has not released Merrill from his obligation in reliance on any obligation or liability on the part of Hershey to pay the avails of the lumber and timber or its value to him.

There are two causes of action alleged in the special count, and they are inconsistent with each other. One is

based upon the duty of Hershey, as the agent of the plaintiff, to pay to the plaintiff the moneys and property received by him from Merrill, which it is alleged were sufficient to pay and satisfy the note and mortgage in full; and the other is based upon the promise of Hershey that if plaintiff would go on and have the mortgaged premises sold under the decree he would pay to plaintiff whatever deficiency there might be after such sale. He nowhere alleges that Hershey received such money and property as Perkins' agent, or that he was authorized to do so, but testifies that he had no such authority. Neither the allegations of the declaration nor the testimony disclose any duty of Hershey as agent of Perkins to receive lumber and timber from Merrill, and convert it into money, and pay it over to the plaintiff. There was no consideration alleged or shown for the promise to pay the deficiency. Plaintiff testifies that until this promise was made there was no undertaking or obligation on the part of Hershey to pay the Merrill debt. Plaintiff was the owner of the decree, and in enforcing it he was enforcing his own remedy. The debt was not Hershey's, and the promise to pay it was to pay the debt of another. Such promise is void, unless in writing, and this was not. If it was a fact that he had received property from Merrill sufficient to pay this debt under a promise to Merrill to do so, he was liable to Merrill for the violation of that promise. And he would incur a further liability in permitting the land to be sold. It is difficult to see how he would be benefited by a sale.

The case of *Calkins v. Chandler*, 36 Mich. 320, is relied upon by plaintiff, but it is not analogous to this. In that case there was a forbearance to enforce a remedy against the debtor, and the Court held this a good consideration for the promise. In this case, instead of a

promise based upon a forbearance, it is just the reverse. It was a request to proceed to the enforcement of a remedy. It is claimed, also, that the case is in point upon the statute of frauds. But the facts are quite different. In that case, as was said in *Gower v. Stuart*, 40 Mich. 748,—

"The creditor, debtor, and the surety were all parties to the arrangement, and it was for their mutual convenience."

In that case Medlar Bros. were sawing lumber for Chandler by the thousand feet, for which Chandler was to pay them. They owed Calkins, and it was mutually agreed by the three parties that Chandler should retain, out of the moneys to become due Medlar Bros. for sawing, the sum of 50 cents per thousand feet, and pay the same over to Calkins. Here was money which Chandler owed to Medlar Bros. which he agreed to pay to Calkins, which was assented to by Calkins and Medlar Bros. The promise was made to Calkins, and operated as a novation, by consent of all parties. But here there was no promise from Hershey to Perkins to pay the money he might receive from the sale of Merrill's property to him. In *Calkins v. Chandler* it was said:

"In many cases the test whether a promise is or is not within the statute of frauds is to be found in the fact that the original debtor does or does not remain liable on his undertaking. If he is discharged by a new arrangement, made on a sufficient consideration, with a third party, this third party may be held on his promise, though not in writing; but if the original debtor remains liable, and the promise of the third party is only collateral to his, it will, in strictness, be nothing more than a promise to answer for another's debt. But where the third party is himself to receive the benefit for which his promise is exchanged, it is not usually material whether the original debtor remains liable or not."

This principle, applied to the case under consideration, shows very clearly that defendant is not liable under his promise to pay the deficiency. *Stewart v. Jerome,* 71 Mich. 201 (38 N. W. Rep. 895); *Pfaff v. Cummings,* 67 Id. 143 (34 N. W. Rep. 281).

The judge charged the jury on behalf of and as requested by the plaintiff as follows:

" No written assignment is necessary to transfer the title to a note and mortgage, but the same may be transferred by a simple delivery of the note and mortgage; and in this case, if you find that, when nothing was due upon the note and mortgage to Perkins, the defendant requested him to send him the note and mortgage, so that he might by foreclosing it compel the mortgagor to pay him a debt he owed him, and said that he should lose nothing upon it, and he would assure the plaintiff the payment of the whole of it, and he afterwards erased the indorsements of payments upon it, and procured a decree for the whole amount due upon it, without the plaintiff's knowledge, then the defendant is estopped from denying the transaction was a purchase of the note and mortgage by him, and he would be liable to the plaintiff."

The difficulty in sustaining this part of the charge is that there is no count in the declaration which alleges a sale of the note and mortgage to the defendant, and that there was no testimony to support such charge. The nearest proof of a sale is that at one time the defendant proposed to buy the note and mortgage, and give his own note therefor, and plaintiff refused to sell, and at a later date the plaintiff offered to sell to defendant, and he refused to buy.

The court further instructed the jury that, if they found for the plaintiff under the above instruction, they should find damages for the amount of $800, and interest at seven per cent. from January 1, 1885; that the interest would be $230.22,—making in all $1,030.22. The jury returned a verdict for $1,030.22.

He further instructed the jury, as requested by the plaintiff, as follows:

" 2. If the jury find that the defendant bought timber and lumber of the mortgagor (that is, Merrill), and in consideration of the same agreed with him to pay for the same by payment of his (Merrill's) debt to Perkins upon this note and mortgage, such promise was an original promise of his own to pay his own debt, and is not within the statute of frauds, and the plaintiff could sue upon it, even if he was not privy to the contract between Merrill and Hershey.

" 3. Bearing upon the question whether the defendant assumed the payment of the Merrill debt to plaintiff, or substituted himself instead of Merrill therefor, the jury may consider the facts that the defendant promised plaintiff that if he would furnish him money to loan he would be surety to him for the amount so loaned; that, if he would let him have the note and mortgage to fore-close for his own purposes, he should lose nothing; that nothing was due upon it; that he asked for an assign-ment of the decree to himself; that he agreed to pay any deficiency after the sale; that he obtained from the plaintiff an agreement to receive a less rate of interest, without the request and knowledge of the mortgagor; that he offered to give the plaintiff his note for the whole amount; and that he promised his attorney to pay the whole debt,—if you find these facts are satisfactorily proven to you by a preponderance of evidence, you may consider them in determining the question.

" 5. If the jury find that Hershey received timber and lumber of Merrill, and you find it was intended by both Merrill and defendant to be used by the defendant him-self, or to be sold by him, and the value of that used and the proceeds of that sold were to be applied upon the mortgage debt of Merrill to Perkins by Hershey, then the plaintiff would be entitled to a verdict in this case for the amount in value of the lumber you may so find he received, with interest at seven per cent. from the time of the delivery of the lumber to him."

We have already said that there could be no liability based upon what transpired between defendant and Mer-rill, arising out of the lumber transaction, and hence the

instructions given above were erroneous. The judgment must be reversed, and a new trial granted.

SHERWOOD, C. J., and CAMPBELL, J., concurred with CHAMPLIN, J.

MORSE and LONG, JJ., concurred in the result.