Complainants sue to obtain a decree requiring defendants to deliver up for cancellation a certain bond made by complainants to defendant Grace Realty Company and a purchase-money mortgage to secure payment of said bond. Complainants, *Page 130 
desiring to purchase a house in Hoboken for residential purposes, were recommended to Claus Kruger, a real estate broker, as a reliable man to represent them as agent. Complainants met Kruger by appointment in the latter part of January, 1931. At such meeting Kruger was accompanied by one Sol Rosenbaum whom he introduced to complainants as a real estate broker associated with him. Complainants engaged said parties as their agents to negotiate a purchase of a residential property for them. Kruger and Rosenbaum showed complainants a house situate on Tenth street in the city of Hoboken in which complainants became interested. Kruger inquired of complainants as to how much they would be willing to pay for said property, and complainant Walter Morris replied he would not give more than $10,000, and requested Kruger to endeavor to purchase same for as low a price as possible, not exceeding $10,000. Kruger asked that the sum of $100 be entrusted to him to be used as a down-payment on the purchase in the event that he would be able to effect a deal with the owner of the property. Thereafter, on February 6th, complainant Walter Morris delivered to Kruger a check for $100 for such purpose. It developed that said house could not be bought for complainants. On February 20th Kruger and Rosenbaum interested complainants in a house known as No. 1112 Bloomfield street, Hoboken, which Kruger stated the owners asked $14,000 for. Complainants informed Kruger and Rosenbaum they would not pay such price and directed Kruger to negotiate for the purchase thereof in complainants' behalf for as low a purchase price as possible. The following day Kruger informed complainant Walter Morris that $12,500 was the lowest price the Bloomfield street property could be bought for, and Kruger was authorized by complainants to purchase the property for them at that figure, and to make use of the $100 check previously given to him as a down-payment on the purchase price. As soon as complainants definitely informed Kruger that they would buy the Bloomfield street property for $12,500 Kruger and Rosenbaum informed the defendant Leddy *Page 131 
thereof, and then introduced Leddy to George Wenz, the owner of the property. Leddy contracted to purchase the property from Wenz for $10,350, paying $100 as a down-payment on the purchase price, taking the contract in the name of Grace Realty Company as vendee. On the afternoon of the same day the contract was signed Kruger turned over to Leddy the aforesaid $100 check which complainant Walter Morris had previously delivered to Kruger. The proofs herein disclose that the defendant Leddy in conjunction with Kruger and Rosenbaum, conspired to defraud complainants of the sum of $2,150, being the difference between what the Bloomfield street property was purchaseable for from Wenz and the amount which complainants were induced to contract to pay to Leddy's corporation, Grace Realty Company, when on February 26th complainant Walter Morris for the first time met the defendant Leddy whom Kruger introduced to Morris as the owner of the property 1112 Bloomfield street. Kruger suggested that they go to the office of the lawyer who was then representing Leddy (such lawyer was not of the firm of Leddy's solicitors of record in the case sub judice) to sign a contract for the purchase of the property. The parties went to said lawyer's office and the lawyer presented to Morris a contract which had already been prepared between Grace Realty Company, as vendor, and complainant Walter Morris, as vendee, which the parties executed. The purchase price mentioned in said contract was $12,500, payable $500 on the execution of the contract; $8,000 by assuming a first mortgage then a lien upon the property; $2,500 by executing a bond with a purchase-money mortgage to secure same; $1,500 in cash upon delivery of the deed. Upon the execution of said contract complainant Walter Morris delivered to the defendant Leddy his check for $400 payable to the order of Grace Realty Company, which, with the sum of $100 previously turned over by said complainant to Kruger, and which Kruger had previously turned over to Leddy, made the initial payment on the contract. The title was closed March 16th. Shortly after complainants had taken possession of the Wenz *Page 132 
property they learned that the defendant Grace Realty Company was not the owner thereof when they engaged to purchase same through their agent Kruger and of their being defrauded of $2,150, and of the means whereby Kruger and Rosenbaum had conspired with the defendant Leddy whereby he should effect a purchase of the property from Wenz for $10,350 through the medium of the defendant Grace Realty Company and effect a resale of the property to complainants through Leddy's said corporation for $12,500. On learning of the transaction as above stated the complainant Walter Morris made a demand upon the defendant Leddy, and through him upon the Grace Realty Company, to surrender and deliver up for cancellation the aforesaid bond and purchase-money mortgage of $2,500. Defendants refused to comply with said demand, and thereupon the instant suit was instituted. It is evident from the proofs herein that complainants were defrauded in the transaction in question, and that the fraud perpetrated upon them was effectuated through the dishonest practices of Kruger and Rosenbaum whom complainants implicitly relied upon as their agent. No consideration whatever passed from the defendant Grace Realty Company to the complainants for the $2,500 bond and mortgage mentioned. The transaction with respect thereto was such as a court of conscience will not countenance. This court is the proper forum for complainants to resort to for relief from the fraudulent bond and mortgage in question. Cornish v. Bryan,10 N.J. Eq. 146. It is a well established rule of law that a party to a fraud cannot profit thereby. The Grace Realty Company was a party to the fraud. The testimony of the defendant Leddy clearly evidences that he not only was fully aware of the fraud which Kruger and Rosenbaum contemplated perpetrating upon complainants, notwithstanding he was fully aware that Kruger and Rosenbaum were acting as agents for complainants, but also that he deliberately participated in said fraud and made possible the accomplishment thereof by Kruger and Rosenbaum. Without Leddy the fraudulent scheme could not have been accomplished. Exhibit *Page 133 C-10, an affidavit made by Leddy, clearly shows his witting participation in the fraudulent transaction by means of which his corporation, Grace Realty Company, intended to benefit. He states in his affidavit that during the first part of February, 1931, he was approached by Kruger and Rosenbaum who informed him they represented complainants who were desirous of buying a piece of property, and that they intended to sell complainants the property at a greater price than the owner of the property asked, and that they urged Leddy to use his corporation, Grace Realty Co., as a straw to purchase whatever property they would induce complainants to regard as a good purchase and have Grace Realty Company contract for the sale of said property to their principals, Morris. Leddy, in said affidavit, evinces that Kruger and Rosenbaum informed him they were desirous of making two commissions, and that the Grace Realty Company could make a profit by acting as a straw in the transaction. The Leddy affidavit discloses that he accepted the offer on behalf of the Grace Realty Company, and Rosenbaum and Kruger prevailed upon him to purchase the Wenz property in the name of Grace Realty Company for the sum of $10,350, and to have the Grace Realty Company sell the same property to complainants for $12,500, and that said property was sold to complainants through the Grace Realty Company acting as a straw. Leddy was asked: "Q. So you deliberately went into that transaction with them?" and he replied, "they said `Leddy, do you want to make some money? We have a buyer.' They wanted to make two commissions." He was then asked, "and you wanted to make some money out of it, too?" and he replied, "yes, sir." He was then asked "at the time that they brought Wenz to you and you agreed to buy the property for $10,350 from Wenz you knew they already had Morris ready and willing to buy the property for $12,500?" and he replied, "yes, sir." He was then asked whether Kruger had not told him that he had already been talking to Morris about the purchase of the property and he said, "yes, sir." He was then asked, "and notwithstanding *Page 134 
that you went and bought it directly with a view of reselling it to Morris thereafter?" and he replied, "yes, sir." He was then asked, "according to the plan suggested by Kruger and Rosenbaum?" and he replied, "yes, sir." Leddy testified that if he had not seen the $100 Morris check in Kruger's possession he would not have bought the Wenz property. The back of said check shows the endorsement of Grace Realty Company, Martin A. Leddy, secretary. The testimony throughout is replete with unmistakable manifestation of the fraud perpetrated by Kruger, Rosenbaum and Leddy, upon the complainants, and of the perfidy of Kruger and Rosenbaum who were acting as agents of complainants. In Suffern Calloway v. Butler, 19 N.J. Eq. 202; affirmed, 21 N.J. Eq. 410,
it is said: "A court of equity will not lend its aid to enforce an unjust and unconscionable bargain, even if its due execution be clearly proved." This court will not become an instrument of injustice, and therefore, upon the facts of the case sub judice, the court will not allow the defendant Grace Realty Company which concededly, as indicated by the Leddy affidavit, supra, was used as a straw (dummy) in the transaction, to benefit by its iniquitous bargain. The proofs herein show Leddy and his wife were the sole stockholders (except for one qualifying share held by their lawyer) of the Grace Realty Company. To allow the defendant Grace Realty Company to retain the mortgage (and bond) which complainants executed and delivered in the transaction in question, and hold same against complainants as a lien against the premises 1112 Bloomfield street, Hoboken, when in fact no consideration passed to the complainants from said defendant therefor, would be repugnant to equity and good conscience. A court of equity in a case such assub judice will examine not only the transaction in question, but the relations of the parties, and all of the surrounding circumstances. Such would undoubtedly be the rule applicable against the defendant Grace Realty Company if a suit were instituted by it against complainants to foreclose the mortgage in question, and by analogy such rule is applicable to and should be applied against *Page 135 
said defendant in this suit without awaiting the institution of mortgage foreclosure proceedings by Grace Realty Company against complainants. A relationship of trust and confidence existed between complainants and Kruger and Rosenbaum whom complainants implicitly trusted as their agents, yet said agents connived with the defendant Leddy to defraud complainants through the means hereinabove stated. This court will not countenance Leddy, or his aforesaid corporation, conspiring with complainants' agents, Kruger and Rosenbaum, to profit at the expense of complainants whose interests their dishonest agents were bound to protect. It is clear from the proofs herein that complainants had no notice whatever of the machinations resorted to by Kruger, Rosenbaum and Leddy to perpetrate upon them the fraud clearly evidenced in the matter sub judice. To particularize herein all of the essential elements of fraud which have been disclosed by the proofs herein would necessitate a recital of pretty much all of the testimony in the case, because the record is replete with clear and convincing proof of the fraudulent purpose conceived by Kruger, Rosenbaum and Leddy for perpetration upon the complainants, and effectuated upon them. It has been repeatedly held that no one can avail himself of what has been obtained by the fraud of another unless he not only obtained it without knowledge or notice, but also gave valuable consideration therefor. It was urged during the hearing that Kruger and Rosenbaum should be made parties defendant to this suit. Such claim is untenable. Kruger and Rosenbaum are neither necessary nor proper parties to the suit. No decree is sought herein against them. They are not in possession of nor have they any title to any property as to which complainants seek redress. The only necessary party defendant herein is the defendant Grace Realty Company which holds, and claims to hold as of right, a $2,500 bond and mortgage, made by complainants to said defendant Grace Realty Company, under the circumstances hereinabove mentioned, which said bond and mortgage was fraudulently obtained, and for which no consideration was *Page 136 
given. The complainants herein have sustained the burden cast upon them by law of proving the alleged fraud and lack of consideration by clear and convincing proof. It was urged herein that because Leddy was not under a direct duty to the complainants as agent or otherwise in his activities with Kruger and Rosenbaum as a result of which the Grace Realty Company was used as a straw or dummy in the transaction mentioned, no relief can be afforded complainants by this court, but such is not the fact. Leddy, secretary and stockholder of Grace Realty Company, conspired with the complainants' agents, whom he knew to be such, to effect a dishonest transaction whereby said corporation would dishonestly acquire a $2,500 bond and mortgage. As agents of complainants it was incumbent upon Kruger and Rosenbaum to effect a purchase of the Wenz property for as low a price as possible; they could have bought same for complainants for $10,350. The circumlocution resorted to by complainants' agents with the defendant Leddy, whereby Leddy and his aforesaid corporation were to profit by the transaction mentioned through defrauding complainants by means of having complainants pay more for the Wenz property than it was salable for by Wenz, is iniquitous and unconscionable, and will not be countenanced by a court of conscience. For lack of consideration alone this court must decree in favor of the complainants and against the defendant Grace Realty Company. It was urged herein that because no arrangement was made between complainants and Kruger and Rosenbaum whereby the latter received compensation from complainants, no duty of fidelity or otherwise was owing by Kruger and Rosenbaum to complainants. Such argument is specious. It is clear from the proofs herein that Kruger and Rosenbaum were engaged to act as agents of complainants in the purchase of the Wenz property, and thus a duty arose on their part, by operation of law, to act with entire good faith and loyalty for the furtherance and advancement of the interests of complainants, their principals. It is of no significance that Kruger and Rosenbaum were volunteers or acted gratuitously. *Page 137 
It is a well established rule of law that relief will be afforded in equity in all transactions in which influence has been acquired and abused, and in which confidence has been reposed and betrayed, and such rule applies as strongly to those who have gratuitously or officiously undertaken to act as agent in behalf of a principal, as to those who are engaged for that purpose and paid therefor. Kruger and Rosenbaum, with the knowledge of Leddy, suffered complainants to be under the impression that they were purchasing the Bloomfield street property directly from the owners; they did not disclose to complainants that Leddy was purchasing the property in the name of Grace Realty Company from the owners Wenz, and that Grace Realty Company was being used as a straw (as stated in the Leddy affidavit) for the sale of the property to complainants at an advanced price over that which the owners Wenz were willing to sell the property for. A court of conscience will not countenance such a dishonest transaction and will not permit parties thereto to profit thereby at the expense of complainants. I am of the opinion that complainants are entitled to the relief prayed, and I will advise a decree accordingly. *Page 138