### HOME UNDERTAKERS, Inc. v. BRISTOW BUILDING & LOAN ASS'N.

No. 23803.   Feb. 26, 1935.

Rehearing Denied March 26, 1935.

Billups & Billups, for plaintiff in error.

Cheatham & Smith, for defendant in error.

PER CURIAM. On the 2nd day of November, 1926, C. E. Kelly and Sally Kelly borrowed $1,800 from the Bristow Building & Loan Association under the ordinary building and loan plan of monthly payments, and to secure the same executed a mortgage on their home in Depew, Okla. Thereafter, Sally Kelly died, and about the month of August, 1928, C. E. Kelly, as a widower, executed his second mortgage in the sum of $500 to the Home Undertakers, Incorporated, to secure the payment of her burial expenses. This second mortgage indebtedness not having been paid, it filed its action in foreclosure against Kelly. Thereafter, and on March 28, 1929, Kelly filed his petition in bankruptcy in the district court of the United States for the Northern District of Oklahoma. With these foreclosure and bankruptcy proceedings pending, C. E. Hutton, who was the secretary-treasurer of the Bristow Building & Loan Association, on April 15, 1929, wrote the following letter to the Home Undertakers:

"I was over at Depew, Okla., yesterday and saw Mr. Kelly. He said that he was on a deal to sell the property and would know about it this week. He also said that if he failed to sell the property for enough to take care of the indebtedness against it, he would consider giving a deed to you for this property. I shall keep in touch with him and let you know how things stand."

On May 15, 1929, Hutton, acting as gratuitous agent for the Home Undertakers, took a deed to the property from Kelly to it, with the following assumption clause written in the face thereof:

"To have and to hold, free from all incumbrances and warrant the title to the same, subject to a mortgage of $1,800 held by the Bristow Building & Loan Association, which the second party agrees to assume."

The Home Undertakers never at any time had any actual possession of the property, but the building and loan association took charge as agent and collected the rents and applied them to its first mortgage, and, in addition thereto, collected from the Home Undertakers the additional sum of $172.51 to be applied to insurance and taxes. On April 25, 1930, the Bristow Building & Loan Association brought this action against the Home Undertakers, praying personal judgment against it upon its assumption of indebtedness and asking foreclosure of its first mortgage lien.

The defendant filed answer pleading no consideration and fraud in procuring the assumption clause above quoted. Trial was had without a jury in the district court and judgment rendered against the defendant on the assumption clause, and it has appealed to this court.

The plaintiff offered its former secretary-treasurer, C. E. Hutton, who took this deed to the defendant, as a witness in support of the assumption contract. Upon cross-examination this witness testified as follows:

"Q. Who wrote this deed out? A. I wrote the deed out. Q. I believe you stated in your direct testimony that Mr. Watts never at any time specifically agreed to assume and agree to pay your mortgage? A. Certainly, it was understood he was to do that. Q. I didn't say understood. Did he ever in specific terms tell you to insert in that deed a provision that he would assume and agree to pay the mortgage? A. He didn't tell me to insert anything in the deed. Q. He didn't tell you to insert anything in the deed? A. No, he didn't. Q. You inserted that on your own motion, did you, Mr. Hutton? A. If they were going to pay the mortgage, certainly. Q. Wait a minute now, I am asking you didn't you insert that in that deed on your own motion? A. My own motion? Q. Your own motion, your own act in doing it? A. In pursuance of our conversation. Q. But did Mr. Watts ever tell you to put those express terms in that deed? A. No, sir. Q. It is your contention that you acted as the agent of the Home Undertakers in getting that deed? A. Well, yes, sir, I was in a way. Q. But at the same time you were protecting your own interest, weren't you? A. I was paid to do that. Q. You were paid to protect your own interests? A. Yes, sir. Q. You knew at that time that the maker of the note and mortgage due the Home Undertakers, C. E. Kelly, was bankrupt, didn't you? A. Yes, sir. * * * Q. You knew at that time that you could not look to Mr. C. E. Kelly for payment of any part of that mortgage,

didn't you? A. Yes, sir. Q. Now, did you pay Mr. C. E. Kelly any money or other consideration for executing this deed? A. No, sir."

This last answer was erroneously stricken by the trial court, but the answer having been made and being competent as evidence, it will be considered by this court as if the order sustaining the objection to it had not been made.

No other witness was offered by the defendant except Hutton in connection with the issue of assumption or the execution of the deed, and his testimony stands as the plaintiff's sole proof on this question.

The Mr. Watts mentioned in the testimony quoted was president of the defendant, and the person who handled the transaction for it.

The deed from Kelly was received by the defendant and put to record in the usual course. There is no testimony that the attention of the defendant was called to the assumption clause in the deed, or that Mr. Watts, who had charge of the matter for the defendant, ever knew that it was in there until plaintiff called upon it to make good upon its assumption, at which time it disclaimed liability on account thereof and offered to deed the property over to the plaintiff. The plaintiff refused this tender of deed and brought this action seeking to hold the defendant liable in personal judgment. Upon trial defendant again tendered a deed to the plaintiff, and which plaintiff again refused to accept.

It is elementary that a volunteer or gratuitous agent is held to the exercise of the same high degree of good faith in representing his principal as if he were an agent for hire. In discussing this question, the District Court of Appeal of California, in the case of Kevane v. Miller, 4 Cal. App. 598, 88 P. 643, said:

"While he could not be compelled to enter upon the performance of the service, nor be mulcted in damages for his failure to do so, when he did enter upon such performance, he was, in common with all other agents, bound to exercise the utmost good faith in dealing with his principal."

See, also, to same effect: Merrill v. Sax, 141 Iowa, 386; Wright v. Smith, 23 N. J. Eq. 106; Bergner v. Bergner, 219 Pa. 113; Lybarger v. Lieblong (Ark.) 56 S. W. (2d Ed.) 760.

It requires no citation of authority to maintain that an active managing officer of a corporation, such as secretary-treasurer, is a fiduciary agent and officer of his corporation, and as such occupies an adversary position to any person making a contract whereby his corporation derives a benefit. In discussing the matter of representing adverse interests or of conflict of interest between an agent and his principal in the case of Hammond v. Bookwalter, 12 Ind. App. 177, 39 N. E. 872, the court said:

"Where it appears that the interest of the agent and those of his principal conflict, the courts will subject the acts of the former to the closest scrutiny, and will infer that he acted corruptly and from a self-interest in all cases of doubt, thus casting upon the agent the burden of proving the good faith and honesty of the transaction."

In the case of Williams v. Lockwood, 175 Cal. 598, the court said:

"The acts of the agent are judged with almost, if not quite, the same strictness as those of a trustee. Where he deals with his principal, and obtains any benefit through the transaction, the law throws upon him * * * the burden of showing * * * that no unfair means of any kind were used by him to induce the contract."

In the case of Silver v. Logue, 16 P. (2d Ed.) 183, the District Court of Appeal of California further said:

"An agent may not obtain any advantage over his principal by even the slightest misrepresentation or concealment."

In the case of German Ins. Co. v. Independent School District of Milford, 80 F. 366, 25 C. C. A. 492, the court said:

"The rule that an agent cannot bind his principal by contract when the agent is personally, or as representing another, interested adversely in the subject-matter, is founded upon plain reason, and is applied whenever the adverse interest of the agent is real and substantial, presenting a temptation to the agent to sacrifice the interest of the principal."

In the fourth syllabus of the case of Hunter Realty Co. et al. v. Spencer et al., 21 Okla. 155, 95 P. 757, this court held as follows:

"Where an agent acts for both parties in making a contract requiring the exercise of discretion, the contract is contrary to public policy, and is voidable in equity upon application of either party."

See, also, Lerk v. McCabe, 349 Ill. 348, 182 N. E. 388; Morris v. Leddy, 111 N. J. Eq. 129, 161 Atl. 693; Perkins v. Hershey, 77 Mich. 504, 43 N. W. 1021.

See, also, quotations from the Supreme

Court of the United States and the general discussion of the question of conflict of interest and of the fidelity required of an agent in the conduct of the business of his principal in the case of Barnes et al. v. Lynch et al., reported in 9 Okla. 156, the language referred to beginning on page 185, 59 P. 995.

It will be noted that at the time this deed was taken C. E. Kelly had filed petition in bankruptcy and Hutton and his plaintiff company knew that it had no security for its first mortgage except the property itself; it will be noted that the assumption clause was put in the deed without having been authorized by the officers of the defendant; it will be noted that the deed was put to record by the defendant without the agent, Watts, who acted for the company in the transaction, having read the same or having been advised that the assumption clause had been written into its face; it will be noted that concurrently with the execution of the deed, the plaintiff took actual charge of the property and collected all rents and profits therefrom; it will be noted that the defendant never had any actual possession of the property except representative possession through the plaintiff, and that it never received one dime of profit from the transaction to bind it by way of estoppel, but, on the contrary, paid out on it upon representations of the plaintiff the sum of $172.51 for insurance and taxes; it will be noted that in taking the deed in controversy the gratuitous agent, Hutton, had at the time no interest in protecting the defendant, but, as an active managing officer of the plaintiff, did have an interest in taking care of his company.

The issue of fraud sounds in equity, and the court will weigh the evidence under that issue as well as declare the law; and, under the facts marshaled and the authorities cited and quoted from above, the judgment in favor of the plaintiff cannot be permitted to stand. It cannot be permitted that the active managing officer of the plaintiff, acting as gratuitous agent of the defendant, could load its deed taken by him with an unauthorized assumption in favor of his employer and bind the defendant in favor of the party with whom his real interest lay.

Other reasons appear in the record herein why the judgment of the trial court should be reversed, but, under the holding above made, it is not necessary to discuss any other question.

The judgment of the trial court will be reversed and cause remanded, with directions to the trial court to render judgment requiring the plaintiff to accept tender of proper quitclaim deed to the property in controversy from the defendant, or that if it shall refuse to do so, then that the foreclosure go without cost to the defendant.

The Supreme Court acknowledges the aid of District Judge E. A. Summers, who assisted in the preparation of this opinion. The District Judge's analysis of law and facts was assigned to a Justice of this court for examination and report. Thereafter, the opinion, as modified, was adopted by the court.

McNEILL, C. J., and RILEY, PHELPS, CORN, and GIBSON, JJ., concur.