GREEN v. MEE.

No. 31783. July 3, 1945.

Rehearing Denied Sept. 10, 1946.

Application for Leave to File Second Petition for Rehearing Denied Oct. 22, 1946.

*173 P. 2d 217.*

Rittenhouse, Webster, Hanson & Rittenhouse, of Oklahoma City, for plaintiff in error.

John W. Mee, of Oklahoma City, for defendant in error.

DAVISON, J. This cause is presented on appeal from the district court of Oklahoma county. It was instituted in that court on November 17, 1939, by Tom L. Green, as plaintiff, against Clara Mee, as defendant. The plaintiff, Tom L. Green, sought to set aside a judgment and decree of foreclosure entered in cause No. 75384 upon the ground that the judgment therein was obtained by fraud; that the transaction wherein the notes and mortgage securing the payment thereof were obtained was based upon fraud in that the plaintiff in cause No. 75384, through her agent and husband, Robert Mee, had induced the agent of Tom L. Green to falsely appraise the value of land described in the mortgage and to thereby and otherwise induce the purchase of said land by Tom L. Green by paying to the agent of Tom L. Green the sum of $1,500.

This cause was tried to the court without the aid of a jury. At the conclusion of the cause the trial court entered its judgment for the defendant, Clara Mee.

In the early part of 1931 the plaintiff and one R. E. L. Finley were driving northwest of Oklahoma City when they saw a sign indicating that a tract of land was for sale. They stopped and looked over the property. Green indicated his disposition to purchase the property if the price should correspond to the reasonable market value of the land for development purposes. Green requested that Finley procure an appraisement from some competent party qualified to ascertain the value of the **land.**

Finley contacted an acquaintance of his, one Harvey Lee, and made an agreement whereby Lee was to inspect and appraise the property, for which service Lee was to be paid the sum of $50 or $100. The record is not clear as to which of the two mentioned sums Lee was to receive and it is also indefinite as to which of said sums he did in fact receive.

The record is not clear as to just what happened next. Lee either went out, appraised the land, and returned to Finley to report his determination of its value, or he located the owner of the land and made a deal with him for a commission and then returned to Finley to report. Lee died in 1932 and did not appear as a witness in this case. We are therefore without the benefit of his testimony.

Some light is cast upon the doubtful point mentioned in the preceding paragraph by the testimony of Mr. Finley, who, as a witness in chief for the plaintiff, testified as follows:

"Q. Did you pay him the $50? A. Yes, sir. He went out and supposedly looked the land over and reported back to us in about two days that the land was worth the money. He wanted to know who the owner was and what he would take for it. Q. Who was the owner? A. Robert Mee. Q. What was the price they wanted? A. $500 an acre. Q. What did he say with reference to this as a fair and reasonable cash value? A. He thought it was worth that money. Q. Did you and Mr. Green rely upon his appraisal of that property? A. Yes, sir, I did, and I told Mr. Green I thought my boy was responsible and told him he said he thought it was worth the money."

The answer first above quoted indicates that Lee completed his appraisal of the property before he became aware of who owned the property and what the owner was asking for the same. In other words, it would appear that Lee completed his work for Green before he contacted Robert Mee, who was then believed to be the owner of the land.

At about the same time Lee contacted Robert Mee, the husband of Clara Mee.

Lee inquired the price at which Mr. Mee proposed to sell the land. He was informed that the proposed sale price was $18,000 cash, net to Mee. Lee then left Mee's office, but returned in a few moments to inquire what price Mee would sell the land for and pay a broker's commission. Mr. Mee decided the price would be $20,000 if he paid a commission, and the sale was not a full cash transaction. He then agreed to pay Lee $1,500 if Lee should procure a purchaser at that plice. Lee advised Finley that the purchase price of the land was $20,000. Finley then advised Tom L. Green that the price of the land was $20,000 and that it was worth that amount. Green agreed to purchase the land for the sum stated and authorized Finley to act for him in the matter.

On March 3, 1931, Mr. Finley and Mr. Robert Mee met at the office of Mee. A contract for the purchase of the land was drafted. The contract was signed for Clara Mee by her husband, Robert Mee, and for Tom L. Green by R. E. L. Finley. In the contract, at the insistence of Mr. Finley, there was incorporated the following sentence: "All commission to be paid by Robert Mee."

Thereafter Tom L. Green purchased the land for $20,000. He paid $5,000 in cash and executed three promissory notes for the remaining $15,000. He also executed a mortgage on the land to secure the payment of the notes. The first of the promissory notes to mature fell due on March 3, 1932. It was not paid. Clara Mee then instituted an action (case No. 75384) to foreclose the mortgage setting up as due and unpaid the entire mortgage debt in the sum of $15,000.

Tom L. Green, as defendant in cause No. 75384, filed an answer and counterclaim asserting damages in the sum of $19,250. On January 10, 1933, the cause (No. 75384) was tried. The result was a judgment for the plaintiff in the sum of $16,746, together with an attorney's fee in the sum of $1,500 taxed as a part of the costs and a decree directing a sale of the mortgaged land, without appraisement, to satisfy the mortgage debt.

Notice of intention to appeal to this court was given and additional time to make and serve a case-made was allowed. But no appeal was ever perfected and the judgment in cause No. 75384 became final.

On August 25, 1933, the mortgaged land was sold. Clara Mee, the plaintiff and judgment creditor in cause No. 75384 was the purchaser. Her bid was $8,000. The purchase price was credited on the judgment and the balance due became a deficiency judgment against the defendant, Tom L. Green. A few days before the 17th day of November, 1939, Tom L. Green discovered that Harvey Lee had received a commission of $1,500 from Robert Mee, the husband and agent of Clara Mee, defendant herein. He then instituted this action to vacate and set aside the mortgage foreclosure judgment in cause No. 75384. He was proceeding under the fourth subdivision of 12 O. S. 1941 § 1031 in conformity with the procedural requirements of 12 O. S. 1941 § 1033.

In presenting this cause for review the plaintiff, Tom L. Green, as plaintiff in error, asserts that "where evidence conclusively establishes that agent of the buyer selected to appraise the property and advise buyer as to the value and advisability of purchasing is paid a commission of $1,500 by the seller to procure buyer's agent to induce sale, such conduct constitutes fraud on the part of the seller sufficient to vitiate the transaction."

Under the above proposition plaintiff asserts: "The record as a whole shows the fraud, we think, beyond doubt, and that under the law the plaintiff in error is entitled to have the entire transaction set aside."

Viewed as a whole we think the evidence clearly shows Harvey Lee received a commission of $1,500 from Robert Mee. However, we do not think that the evidence conclusively shows that such commission paid by Robert Mee was agreed upon before Lee had completely performed his services for

Green, that is, before he had appraised the land and advised Finley as to the value thereof. The testimony of Finley previously quoted in this opinion indicates that Lee completed his services in appraising the property and advising Green through Finley before he ever contacted Mee.

The record does not disclose that plaintiff knew Harvey Lee. The record does disclose, however, that plaintiff had no personal business relationship with Lee in connection with the transaction and that all of the transaction on plaintiff's part was carried on through his agent, Finley, and with no other person, and that plaintiff relied solely on the acts of Finley.

It is well settled in this jurisdiction that where an agent acts for both parties in making a contract requiring the exercise of discretion, the contract is contrary to public policy and voidable in equity upon the application of either party. Brockman v. Delta Mfg. Co., 184 Okla. 357, 87 P. 2d 968; Home Undertakers, Inc., v. Bristow Building & Loan Association, 171 Okla. 208, 42 P. 2d 259; Hunter Realty Co. v. Spencer, 21 Okla. 155, 95 P. 757; see, also, Hyland v. Millers National Ins. Co. (9th Cir.) 91 F. 2d 735; Pan American Petroleum and Transport Co. v. United States of America, 273 U. S. 456, 71 L. Ed. 734, and City of Findlay v. Pertz et al. (6th Cir.) 66 Fed. 427.

The above authorities pronounce a rule which prohibits an agent from acting concurrently for two parties to a contract when the contract involves discretion and when the fact of the dual agency is unknown to the parties. The rule, however, does not prevent a former agent who has terminated his former agency by performance of his contract from thereafter accepting similar employment from another in connection with a contract with his former principal. 3 C.J.S. 28, sec. 146.

It follows that if Lee was employed by Mee after the termination of Lee's agency for Green, the transaction is free from illegality.

The plaintiff, as plaintiff in error, also urges that:

"Where trial court renders judgment in a case of purely equitable cognizance in favor of the plaintiff, and without the filing of a motion for new trial by the defendant orders further hearing at the request of defendant, and thereafter renders judgment for defendant on further evidence from one of defendant's witnesses, the Supreme Court will weigh and consider the entire evidence, and render the judgment that the trial court should have entered."

This proposition is based upon a misconception of the record. On August 26, 1943, the trial judge wrote a letter to the attorneys for the respective parties announcing his intention to decide the cause for the plaintiff and requesting the parties to prepare and submit a journal entry to that effect. The record does not reflect that the trial judge, sitting as a court, ever rendered such a judgment. He merely wrote a letter announcing the way the cause would be decided. After this letter was written the cause was reopened for further hearing and at the second hearing further testimony, by deposition, of Elizabeth Adams was produced. In this deposition she stated that she was well acquainted with Mr. Finley and that Harvey Lee was her brother. That she personally knew of the real estate transaction involved herein and that the deal was discussed between Finley and Lee in her presence. She testified that it was understood between Finley and Lee that Lee was to receive a commission to $1,500, as a broker, in the consummation of the sale. This testimony, however, as pointed out by plaintiff, was somewhat contradictory to certain portions of her testimony in a former deposition. However, the trial court evidently believed the pertinent part of her testimony in the second deposition. It was after the hearing of the second deposition that the court entered formal judgment in the cause.

This court has held that the pronouncement of judgment is the judgment. The signature of the trial judge

on a journal entry does not amount to a judgment. Abernathy v. Huston, Co. Treas., 166 Okla. 184, 26 P. 2d 939. Certainly the signature of the trial judge on a letter requesting that a journal entry be prepared does not amount to a judgment.

Under the record in this case, we are of the opinion that the judgment of the trial court should be affirmed.

GIBSON, C.J., HURST, V.C.J., and RILEY and OSBORN, JJ., concur. BAYLESS, J., concurs in conclusion. WELCH and CORN, JJ., dissent.

### On Rehearing.

WELCH, J. (dissenting). The majority opinion cannot be sustained on the record as I view it. By the majority opinion the judgment is affirmed on the sole ground that the record shows that Harvey Lee was employed by Green to inspect the property and report and recommend as to its value and that he made his inspection and reported his recommendation, thus completing that employment before he contacted Mee, the owner, and was employed by Mee to promote the sale for a commission.

The record, as I view it, discloses beyond question that the acts and transactions occurred in this chronological order: Harvey Lee was first employed by Green. He then inspected the land and ascertained that Mee was the owner. He then contacted Mee and obtained the price of $18,000 net. He told Mee that his client would not pay a commission and then Mee priced the land at $20,000, agreeing to pay Harvey Lee a commission. Thereafter Harvey Lee reported to Green that the price was $500 per acre, or $20,000, and that the price was fair and the land worth that

much money. All this is clearly disclosed by the testimony of Mee and Mr. Finley, who was the agent for Green. With that testimony in the record and the facts therein disclosed by the testimony of Mee, it is not possible to justify the conclusion that Harvey Lee first contacted Mee after he had reported the price and his recommendation to Green and Finley.

When Harvey Lee reported to Green and Finley that the price was $500 per acre, or $20,000, he must have obtained that information theretofore in some manner. The record shows he obtained that information from his previous interview with Mee. It is doubtful that he could have obtained that information otherwise or from anyone else. The record discloses no possibility that he could have obtained it otherwise. Therefore, it follows that his conference with Mee occurred before he made his report to Green and Finley and before his employment by Green could have been terminated.

The majority opinion discloses that Mee first priced the land at $18,000 net cash to him, and that he then raised the price to $20,000, agreeing to pay Harvey Lee the $1,500 commission and that Lee advised Finley and Green as to the latter price of $20,000 and recommended the land to be worth that amount. Then surely the majority opinion or majority view cannot be supported in the conclusion that Harvey Lee did or could have reported the $20,000 price before his conference with and employment by Mee.

Therefore, I respectfully dissent to the conclusion which seems to me to be clearly refuted by the record, and by language in the majority opinion itself.